Mark R. Figueiredo, Esq. (SBN 178850)
Ethan G. Solove, Esq. (SBN 308026)
Jaclyn M. Ford, Esq. (SBN 272641)
STRUCTURE LAW GROUP, LLP
1754 Technology Drive, Suite 135
San Jose, California  95110
Telephone: (408) 441-7500
Facsimile:  (408) 441-7501

Attorneys for Defendants
INDYZEN, INC. and PRAVEEN NARRA KUMAR

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PARKRIDGE LIMITED, a Hong Kong corporation, by Mabel Mak, and MABEL MAK, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>INDYZEN, INC., a California corporation, and PRAVEEN NARRA KUMAR, an individual,<br><br>Defendants, | CASE NO.  16-CV-07387-KAW<br><br>**NOTICE OF PETITION AND PETITION FOR ORDER COMPELLING ARBITRATION PURSUANT TO 9 U.S.C. § 4; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:     March 13, 2017<br>Time:    TBD<br>Dept.:    TBD<br>Judge:   Hon. Kandis A. Westmore |

To Plaintiffs Parkridge Limited and Mabel Mak (collectively the "Plaintiffs"):

Please take notice that on March 13, 2017, at a time yet to be determined, or as soon thereafter as the matter may be heard at the United States District Court, Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, in a Department yet to be determined, Defendants Indyzen, Inc., and Praveen Narra Kumar (collectively the "Defendants") will, and hereby do, petition the Court for an Order Compelling Arbitration of Plaintiffs' claims against Defendants.

This Petition is made pursuant to 9 U.S.C. § 4 on the grounds that Plaintiffs and Defendants contracted to resolve disputes like this one in arbitration, but Plaintiffs have refused to arbitrate as required.

PETITION FOR ORDER COMPELLING ARBITRATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

This Petition is based on this Notice of Petition and Petition, the below Memorandum of Points and Authorities, the Declaration of Mark R. Figueiredo and exhibits thereto, the pleadings, records, and files of this lawsuit, and on such other and further oral and documentary evidence and legal memoranda as may be presented at or before the hearing on this Petition.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Long before this case was filed, the parties contracted to arbitrate the types of claims brought in Plaintiffs' lawsuit. Then, when Defendants asked Plaintiffs to arbitrate the current case, Plaintiffs refused. Nonetheless, all of Plaintiffs' claims are governed by an arbitration clause, and the Court should order the Plaintiffs to honor it.

Plaintiffs' entire lawsuit is based on issues arising from a Software Development and Licensing Agreement relating to a mobile app called "Morfit" (throughout this brief, this agreement is referred to as the "Morfit Agreement" and this app is referred to as the "Morfit App"). The Morfit Agreement has plain language requiring the arbitration of any disputes. In light of Plaintiffs' refusal to go to arbitration on their own, the Court should order them to it.

With regard to Plaintiff Mabel Mak ("Mak") who was not a signatory to the Morfit Agreement, the Court should nonetheless order her to arbitration. The doctrine of equitable estoppel bars her from enjoying the benefits of the Morfit Agreement by suing under it along with Plaintiff Parkridge Limited ("Parkridge")—who did sign the Morfit Agreement—without paying the piper by carrying out its obligations. Thus, the Court should order the entire case to arbitration.

**FACTS**

Defendant Praveen Narra Kumar ("Narra") is the founder and CEO of Defendant Indyzen, Inc. ("Indyzen"). (Compl. at ¶ 11.) Indyzen specializes in software and web development for businesses. (*See id.*) In early 2015, Indyzen and Plaintiff Parkridge entered into an agreement relating to the Morfit App, as discussed further below. (Compl. at ¶ 31.) Plaintiff Mak is a majority shareholder of Parkridge. (Compl. at ¶ 13.)

At or around June 2013, Narra met Randy Dobson ("Dobson") at a professional development event. (Compl. at ¶ 8.) Narra and Dobson discussed an idea for the Morfit App to connect personal fitness trainers with clients through a personality matching system. (Compl. at ¶¶ 7, 9.)

- 3 -
PETITION FOR ORDER COMPELLING ARBITRATION

1  On January 5, 2015, Parkridge and Indyzen entered into the Morfit Agreement.  (Compl.
2  at ¶ 31.)  Narra signed on behalf of Indyzen in his capacity as CEO.  (Compl., **Exhibit B,** Page 8.)
3  The Morfit Agreement called for Indyzen to develop the Morfit App for Parkridge.  (*See*
4  *generally id*. and **Schedule A** thereto.)  Paragraph 11 of the Morfit Agreement, titled "Settlement
5  of Disputes," states that "any dispute or disagreement arising between [Indyzen] and [Parkridge] .
6  . . shall be referred to arbitration in San Jose, CA."  (*See id.* at ¶ 11.)
7  On December 29, 2016, Mak and Parkridge brought an action against Narra and Indyzen
8  alleging several causes of action all arising out of the Morfit Agreement.  (*See* Compl. at 1,
9  Introduction Section (summarizing the entire case as allegations arising out of the Morfit
10 Agreement.)  Defendants have since asked Plaintiffs to arbitrate this case, but Plaintiffs have
11 refused.  (Decl. of Mark R. Figueiredo, ¶ 4.)

**ARGUMENT**

**A.  The Court Should Send The Entire Case To Arbitration As Required By The Morfit Agreement.**

All of Plaintiffs' claims arise out of the Morfit Agreement, so they should all be sent to arbitration as required by it.  As discussed below in Section A(1), Plaintiffs' entire complaint is based on the Morfit Agreement.  In fact, the entire complaint does nothing more than restate the same Morfit Agreement issues in different ways.  Additionally, Plaintiff Mak should be compelled to arbitrate this case even though she did not sign the Morfit Agreement under the doctrine of equitable estoppel.  This is because she has sought the benefits of the Morfit Agreement, and should therefore be bound by its obligation to arbitrate as well.[1]

---

[1] As discussed throughout this Petition, the Court should send the entire case to arbitration, as every cause of action arises from the Morfit Agreement, which contains an arbitration clause. However, if the Court is inclined to only send some of the claims to arbitration, it should order the case stayed pursuant to Defendants' concurrently filed Motion to Stay pending the arbitration's outcome in the interest of judicial economy and of avoiding duplication of effort. (*See U.S. for Use & Benefit of Newton v. Neumann Caribbean Int'l, Ltd.* (1985) 750 F.2d 1422, 1426-27 (finding it was appropriate for the District Court to stay the case pending the outcome of the arbitration of some of the claims, citing the interest of avoiding "duplication of effort" and stating "[i]t does not seem to us erroneous for the District Court to have preferred to allow the arbitration to take place first, particularly since the type of controversy here involved seems one well-suited to the informal, and often expeditious, proceedings which generally characterize arbitration.").)

PETITION FOR ORDER COMPELLING ARBITRATION

### 1. Each And Every Cause Of Action In Plaintiffs' Complaint Arises Out Of The Morfit Agreement.

The Court should send the entire case to arbitration as required by the Morfit Agreement. The Morfit Agreement's arbitration clause is broad and states that "*any dispute or disagreement arising between [Indyzen] and [Parkridge] . . . shall be referred to arbitration in San Jose, CA.*" (Compl., **Exhibit B,** Page 6, ¶ 11 (emphasis added).) The Morfit Agreement further states that "[Parkridge] *waives any and all rights it may have to a jury trial* in connection with any proceedings concerning this agreement." (*Id.*)

9 U.S.C. § 4 allows "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to petition the United States District Court "for an order directing that such arbitration proceed in the manner provided for in such agreement." When considering the applicability of arbitration clauses, "[e]very court that has construed the phrase 'arising in connection with' in an arbitration clause has interpreted that language broadly." (*Simula, Inc. v. Autoliv, Inc.* (1999) 175 F.3d 716, 721.) Additionally, the allegations "need only 'touch matters' covered by the contract containing the arbitration clause, and all doubts are to be resolved in the favor of arbitrability." (*Id.*) Here, the arbitration clause uses even broader language than "arising in connection with" the agreement—it simply states that all disputes between Indyzen and Parkridge should be arbitrated. (*See* Compl., **Exhibit B,** Page 6, ¶ 11.) Thus, the Court should be even more liberal in determining the applicability of the arbitration agreement than the already generous standard that is normally prescribed.

Each and every one of Plaintiffs' claims fall within the scope of the Morfit Agreement's arbitration clause. They each arise from issues relating to the Morfit App and Morfit Agreement. (*See generally* Compl., **Exhibit B** and Schedule A thereto.) On top of this, the Morfit Agreement's arbitration clause is general and all-encompassing, governing "*any dispute or disagreement*" between Parkridge and Indyzen. (*Id.* (emphasis added).)

Plaintiffs' lawsuit focuses entirely on the Morfit Agreement. In fact, the term "Morfit" appears in the Complaint over 80 times. The facts section of the Complaint is focused entirely on the Morfit App and the Morfit Agreement. Plain readings of each of the causes of action show

- 5 -
PETITION FOR ORDER COMPELLING ARBITRATION

that they all arise out of the Morfit Agreement and directly reference the Morfit App and the Morfit Agreement.  The prayer is limited to relief relating to the Morfit App and the Morfit Agreement.  In short, this lawsuit has Morfit Agreement written all over it.

Taking each cause of action in turn, Count IV and Count V of the Complaint allege claims for "Breach of Contract, Including Breach of the Covenant of Good Faith and Fair Dealing," and for "Unjust Enrichment (In The Alternative)."  These claims explicitly reference the Morfit Agreement and seek damages arising from Indyzen's alleged breach of it.  (Compl. at ¶¶ 151-161.)  Count IV seeks damages because Indyzen allegedly "breached the [Morfit] Agreement" in various ways.  Count V echoes Count IV, stating that it is brought "in the alternative" to Count IV.  Further, the alleged liability for Count V stems from allegations regarding "Indyzen's failure to deliver the Morfit App on time with functions that meet the [Morfit] Agreement's functional specifications."  As such, these causes of action arise out of the Morfit Agreement and should be arbitrated as required by it.

With regard to Counts VI and VII, Plaintiffs allege the claims of "Fraudulent Misrepresentations" and "Fraudulent Concealment."  Both of these fraud claims stem from alleged misrepresentations made by Narra in his capacity as CEO of Indyzen about the Morfit App.  Count VI states that "Narra, on behalf of Indyzen" made misrepresentations about Morfit that "are contained in the [Morfit] Agreement."  (Compl. at ¶ 167.)  The remainder of the cause of action continues to discuss alleged misrepresentations that relate entirely to the Morfit Agreement.  Similarly, Count VII alleges that Narra concealed facts in his planning of the "[Morfit] Agreement between Parkridge and Indyzen."  (Compl. at ¶ 184.)  Neither of these claims—and none of the claims throughout the lawsuit—allege anything against Narra as an individual outside of his capacity as Indyzen's CEO, which is the capacity in which he signed the Morfit Agreement.  Thus, these causes of action are governed by the Morfit Agreement's arbitration clause.

Finally, with regard to Counts I through III, each of these claims stem from allegations that Narra, again acting in his capacity as CEO of Indyzen, breached fiduciary duties to Parkridge by acting badly in the performance of the Morfit Agreement.  For instance, Count I alleges that

1  Narra induced Parkridge to contract with Indyzen so that "he, as CEO of Indyzen, and Indyzen,
2  his company, could profit from the [Morfit] Agreement with Parkridge." (Compl. ¶ 86.)  Count II
3  alleges that Indyzen "participated in Narra's breaches by concealing its lack of qualification and
4  inability to meet the functional specifications and deadlines set by the [Morfit] Agreement."
5  (Compl. at ¶ 118.)  And Count III alleges that "Narra breached his duties by engaging in self-
6  dealing by advocating for and facilitating consummation of the [Morfit] Agreement with
7  Indyzen." (Compl. at ¶ 133.)  Each of Plaintiffs' breach of fiduciary duty claims arises from the
8  Morfit Agreement, and should be governed by its arbitration clause accordingly.
9       In sum, all of Plaintiffs' claims arise from and are related to the Morfit Agreement.  Thus,
10  the Court should order the entire case to arbitration as the Morfit Agreement requires.

**2. Mak Should Be Included In The Order For Arbitration Under The Doctrine Of Equitable Estoppel, Because She Has Sought The Benefit Of The Morfit Agreement And Therefore Should Be Bound By Its Obligations.**

13  Plaintiff Mak did not sign the Morfit Agreement, but she should still be compelled to
14  arbitrate the case under the doctrine of equitable estoppel.  This is because she has sued entirely
15  under the Morfit Agreement, and therefore should be bound by its requirement to arbitrate.
16       Federal law allows for litigants who did not sign an arbitration agreement to be compelled
17  to arbitration anyway if allowed under relevant state contract law, such as the doctrine of
18  equitable estoppel, which is in effect in California.  (*Arthur Anderson LLP v. Carlisle* (2009) 556
19  U.S. 624, 631-32.)  Under equitable estoppel, a plaintiff nonsignatory to an arbitration agreement
20  can be compelled to arbitrate when "the plaintiff's claims are intimately founded in and
21  intertwined with the underlying contract obligations." (*Murphy v. DirecTV, Inc.* (2013) 724 F.3d
22  1218, 1229 (internal quotations and citations omitted).)  Equitable estoppel is proper for cases
23  like the case at bar, where it "precludes a party from claiming the benefits of a contract while
24  simultaneously attempting to avoid the burdens that contract imposes." (*Mundi v. Union Sec. Life*
25  *Ins. Co.* (2009) 555 F.3d 1042, 1046 (internal quotations and citations omitted).)
26       Further, "a nonsignatory may be held to an arbitration clause where the nonsignatory
27  knowingly exploits the agreement containing the arbitration clause despite having never signed
28  the agreement." (*Id.*)  This is the situation here.  As discussed above in Section A(1), each of

- 7 -
PETITION FOR ORDER COMPELLING ARBITRATION

Plaintiffs' claims arises from the Morfit Agreement.  Mak, who did not sign the Morfit Agreement, brought each of her claims along with Parkridge, who did.  (*See* Compl. at ¶¶ 77 (Count I), 107 (Count II), 124 (Count III),  151 (Count IV), 162 (Count V), 166 (Count VI), 183 (Count VII).)  Thus, Mak seeks the benefit of the Morfit Agreement.  She should be bound to its obligations as well.  As such, the Court should order her to arbitrate the case.

## CONCLUSION

The Court should order the entire case to arbitration.  Each and every cause of action in Plaintiffs' complaint is related to the Morfit Agreement, which requires arbitration of any disputes.  Defendants have asked Plaintiffs to arbitrate the claims, but Plaintiffs have refused.  As such, the Court should order the case to arbitration.  Further, with regard to Mak, she should be compelled to arbitrate even though she did not sign the Morfit Agreement.  The doctrine of equitable estoppel bars Mak from suing under the Morfit Agreement alongside Parkridge—who was a signatory to the Morfit Agreement—without carrying out the obligations of the Morfit Agreement like the arbitration requirement.  Thus, the Court should order the entire case to arbitration.  Further, if the Court is only inclined to send some of the causes of action to arbitration, it should nonetheless stay the entire action pending the outcome of arbitration pursuant to Defendants' concurrently filed Motion to Stay in the interest of judicial economy and of avoiding duplication of efforts.

For the foregoing reasons, Defendants respectfully request that the Court grant their Petition for Order Compelling Arbitration by sending the entire case to arbitration.

Date:  March 8, 2017                                      STRUCTURE LAW GROUP, LLP

By:     /s/ Ethan G. Solove
Ethan G. Solove, Esq.
Attorneys for Defendant
INDYZEN, INC., and PRAVEEN NARRA KUMAR