1   Adam Wolek  (Lead Counsel; *pro hac vice*)
Brian Noack (*pro hac vice*)
2   Wolek & Noack
333 S. Wabash Ave., Suite 2700
3   Chicago, IL  60604
P:312.860.9006
4   F: 708.843.0509
adamw@wonoip.com
5   briann@wonoip.com

6
DAVID A. MAKMAN (SBN 178195)
7   david@makmanlaw.com
LAW OFFICES OF DAVID A. MAKMAN
8   655 Mariner's Island Blvd., Suite 306
San Mateo, CA  94404
9   Telephone: (650) 242-1560
Facsimile:  (408) 716-3052
10

11   Attorneys for Plaintiffs
Parkridge and Mabel Mak

12

13                    **UNITED STATES DISTRICT COURT**

14                    **NORTHERN DISTRICT OF CALIFORNIA**

15

| | |
|---|---|
| On Behalf of PARKRIDGE LIMITED, a Hong Kong corporation, by Mabel Mak, and MABEL MAK, an individual, | **Case No.** 16-cv-07387-KAW |
| Plaintiffs, | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PLAINTIFF'S CLAIMS** |
| v. | |
| INDYZEN, INC., a California corporation, and PRAVEEN NARRA KUMAR, an individual, | |

22                          **INTRODUCTION**

23        Only two of the four parties in this suit contracted to arbitrate certain claims: Plaintiff

24   Parkridge Ltd. ("Parkridge") and Defendant Indyzen, Inc. ("Indyzen"). Whereas Defendant Praveen

25   Narra Kumar ("Narra") is not a party to any written agreement with any Plaintiff, nor any agreement

26   to arbitrate. Indeed, the contract between Parkridge and Indyzen – the Software Development and

28
                                         1
PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PARKRIDGE'S CLAIMS

Licensing Agreement ("Morfit Agreeement") – has an arbitration clause that addresses only certain disputes, and that only encompasses "disputes or disagreement[s] *arising between* [Indyzen] and [Parkridge]." (Dkt. 1, Ex. A at p. 6 § 11) (emphasis added.)

Based on this limited provision with one defendant, defendants Indyzen and Narra seek an order compelling arbitration on *all* claims for *both* defendants. (Dkt. 12 at 3, ¶¶ 7-8, 16-17.) Defendants further seek to compel a nonsignatory to the Morfit Agreement – Mabel Mak ("Mak") – to arbitration based on equitable estoppel. (Dkt. 12 at 3, ¶¶ 12-16.)

Parkridge requests this Court deny Defendants' motion for the following reasons. First, Parkridge is not bound to arbitrate its four claims against Narra (Counts I, III, VI, VII) because Narra was not a signatory to any arbitration agreement, including the Morfit Agreement. And in any event, the claims against Narra do not arise from the Morfit Agreement. Second, Parkridge is not required to arbitrate its claim against Indyzen (Count II) because Indyzen's aiding and abetting occurred before the Morfit Agreement was executed, thus it also does not arise from the Morfit Agreement. Third, Parkridge's unjust enrichment claim (Count V) arises out of payments made to Indyzen, and is thus explicitly excluded from arbitration. Fourth, nonsignatory Mabel Mak cannot be compelled to arbitrate based on an equitable estoppel theory because there is no evidence that she knowingly exploited the Morfit Agreement in bringing these claims. And finally, a stay would be improper if arbitration is granted-in-part because the suit against either defendant does not depend on an arbitrator's rulings, if any.

## BACKGROUND

In 2013, Randy Dobson ("Dobson"), owner of Parkridge, met Narra at a business event. (Compl. ¶ 8.) The two discussed Dobson's idea for a a mobile online personal training software application that would connect personal trainers with clients ("the Morfit App"), and Dobson communicated to Narra that he had no technical experience in app development. (*Id*. ¶¶ 9, 10.) Narra

2

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PARKRIDGE'S CLAIMS

then pitched his software development expertise to Dobson, and in August 2013, Dobson hired Narra and formed Parkridge to develop the Morfit App. (*Id.* ¶ 11.) Narra was hired to be Parkridge's Chief Technology Officer ("CTO"). (*Id.* ¶ 26.) Mabel Mak was one of Parkridge's two shareholders, the other being Narra's father. (*Id.* ¶ 13.)

As CTO of Parkridge, Narra saw Dobson's lack of expertise as his opportunity to take advantage of Parkridge and pursue his own interests and not those of Parkridge's. First, unlike a reasonably prudent CTO would, Narra did not search for other entities that could successfully build the Morfit App for a low price. (Compl. ¶ 138.) Instead, Narra represented that his own company, Indyzen, could successfully develop the mobile Morfit App at a reduced price. (*Id.* ¶ 136.) Next, despite knowing the Morfit App could be built at a price lower than the one Indyzen offered, Narra represented that Indyzen was the best value for App development. (*Id.* ¶ 93.) Narra further concealed facts and misrepresented reasonable app development prices in the industry so Indyzen could overcharge Parkridge, yet still seem favorable. (*Id.* ¶¶ 87, 187.) Narra also misled Dobson to believe Indyzen had the skills and know-how to successfully develop the Morfit App when Narra knew it did not have such capabilities. (*Id.* ¶ 85.) Narra further misled Dobson to believe that Indyzen's proposals and offers were favorable to, and in the interest of, Parkridge. (*Id.* ¶ 84.) All of this was done to induce Parkridge to sign a software development agreement with Indyzen.

Consequently, Parkridge signed the Morfit Agreement with Indyzen on January 5, 2015. (*Id.* ¶ 46.) While that agreement provided that Parkridge and Indyzen would arbitrate certain disputes, it explicitly excepted others from arbitration. For instance, Paragraph 11 of the Morfit Agreement states that "[e]xcept for any dispute arising out of payments due to Company, any dispute or disagreement arising between the Company and the Customer which is not resolved. . . shall be referred to arbitration in San Jose, CA…" (Ex. A at 6, § 11.)

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PARKRIDGE'S CLAIMS

In the coming months, Narra continued to intentionally fail to act as a diligent CTO would have: he bypassed any testing during app development, failed to provide Parkridge with truthful updates, and lied about the Morfit App's progress. (Compl. ¶¶ 97-99.) And when concerns over the quality of the Morfit App were raised to Narra, he attempted to shift the blame to Parkridge's lack of guidance, despite being Parkridge's CTO and source of guidance on all technical issues. (*Id.* ¶ 33.)

Parkridge alleges breach of fiduciary duty and fraud against Narra for fraudulently inducing Parkridge to contract with Indyzen, and aiding and abetting against Indyzen. And after Parkridge paid Indyzen for a year of unsuccessful development, Indyzen refused to hand over the Morfit App. (Compl. ¶¶ 69, 71, 74, 75.) Parkridge alleges unjust enrichment by Indyzen based on those payments. Accordingly, Parkridge's claims arise out of (1) breach of fiduciary duty by Narra; (2) fraud by Narra; (3) Parkridge's payments to Indyzen; and (4) conduct precedent to and independent from the Morfit Agreement.

## LEGAL STANDARD

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013). In attempting to compel arbitration of all Parkridge's claims, defendants ask the Court to ignore this bedrock principle.

The contractual right to compel arbitration "may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration." *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 744 (9th Cir. 1993). While public policy favors arbitration, "the strong public policy in favor of arbitration does *not* extend to those who are not parties to an arbitration agreement." *Kramer*, 705 F.3d at 1126 (internal citation omitted) (emphasis added); *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013) (the liberal federal policy regarding scope of arbitration does not apply to the question "whether a particular *party* is bound by the arbitration

4

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PARKRIDGE'S CLAIMS

agreement.") (emphasis in original). Although there are contract and agency principles[1], such as

agency and estoppel[2], where nonsignatories to an arbitration agreement may compel arbitration,

defendants have the burden of establishing these theories. *In re Carrier IQ, Inc. Consumer Privacy*

*Litig.*, No. C-12-MD-2330 EMC, 2014 WL 1338474, at *4-5 (N.D. Cal. Mar. 28, 2014) ("Defendants

have the burden of establishing equitable estoppel"). All facts further must be resolved and construed

in the plaintiff's favor. *Id.* Accordingly, a nonsignatory to an arbitration provison bears the burden of

establishing his purported right to arbitration, and federal policy does not place a thumb on the scale

in favor of arbitration. *See id.*

Further, courts "cannot expand the parties' agreement to arbitrate in order to achieve greater

efficiency." *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994).

"The Federal Arbitration Act '*requires* piecemeal resolution when necessary to give effect to an

arbitration agreement.'" *Id.* (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S.

1, 20 (U.S. 1983)).

## ARGUMENT

### I.      There is No Contract with Narra to Enable Him to Compel Arbitration.

Narra has no right, under any agreement, to compel arbitration of the claims against him. *See*

*Britton v. Co-op Banking Grp.*, 4 F.3d 742, 744 (9th Cir. 1993) ("The right to compel arbitration

stems from a contractual right."). Indeed, Narra did not sign any agreement with an arbitration

provision, including the Morfit Agreement. (*See* Dkt. 1, Ex. A.) Nonetheless, Defendants argue that

---

[1] "Among these principles are 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009).

[2] *Rajagopalan*, 718 F.3d at 847 (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)) ("Traditional principles of state law determine whether a contract may be enforced by or against nonparties to the contract…").

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PARKRIDGE'S CLAIMS

Parkridge's claims against Narra are subject the Morfit Agreement's arbitration provision. (Dkt. 12 at 6,¶¶ 14-28; at 7, ¶¶1-8.) But non-signatories to a contract do not have any rights to enforce that contract, or its provisions. *See In re Carrier IQ, Inc. Consumer Privacy Litig.*, 2014 WL 1338474, at *5 ("Generally, one who is not a signatory to an agreement has no right to enforce it). Accordingly, the contractual right to arbitration may not be invoked by Narra, because he is not a party to the Morfit Agreement.

Additionally, Defendants supply no principle upon which a nonsignatory to an agreement – like Narra here – may enforce an arbitration agreement. *See Kramer*, 705 F.3d at 1128 (a litigant not a party to an arbitration agreement has the burden, under relevant state contract law, to show he is allowed to enforce the agreement). Here, Defendants have the burden, yet failed to argue that nonsignatory Narra is entitled to compel arbitration under any principles of contract. *See Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."). Accordingly, because Narra has not established that he is entitled to enforce the Morfit Agreement's arbitration clause, under *any* principles, compelling Parkridge to arbitrate its claims against Narra would be improper.

## II.   Narra Cannot Compel Arbitration of the Breach of Fiduciary Duty or Fraud Claims Because They Do Not Arise From the Morfit Agreement.

Even if Defendants had argued that Narra could compel arbitration via contract or agency principles – which they did not – Narra could not compel Parkridge to arbitrate its claims against him because (1) the claims against Narra are viable without reference to or interpretation of the Morfit agreement, and (2) Narra's wrongful acts fall outside the narrow class of disputes covered by the arbitration clause. Against Narra, Parkridge alleges Breach of Fiduciary Duty (Count I), Breach of Fiduciary Duty under Hong Kong Law (Count III), Fraudulent Misrepresentations (Count VI), and

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PARKRIDGE'S CLAIMS

Fraudulent Concealment (Count VII). These claims do not arise out of the Morfit Agreement, but rather, arose before it and from acts independent from the terms of the agreement.

First, even if Parkridge's claims "directly reference the Morfit App and the Morfit Agreement," this does not control whether the claims against Narra are intertwined with the Morfit Agreement. *See Murphy v. DirectTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013) ("a signatory must **rely** on the terms of the written agreement in asserting its claims against the nonsignatory" in order for its claims to be "intimately founded in and intertwined with the underlying contract") (emphasis added); *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 218 (2009) ("merely making reference to an agreement with an arbitration clause is not enough," the signatory "must rely on the terms of the written agreement in asserting its claims' [sic] against the nonsignatory."); *and also Goldman*, 173 Cal. App. 4th at 230 (citing *Palmer Ventures LLC v. Deutsche Bank AG*, 254 Fed. Appx. 426, 431-32 (5th Cir. 2007)) ("even if a plaintiff's claims 'touch matters' relating to the arbitration agreement, the claims are not arbitrable unless the plaintiff relies on the agreement to establish its cause of action"). Here, Narra's wrongdoings stem from his roles and duties as Parkridge's CTO, duties separate from those imposed by the Morfit Agreement. *See Goldman*, 173 Cal. App. 4th at 230 (claims that are "fully viable without reference to the terms" of the agreement provide no basis for a nonsignatory to compel arbitration).

Specifically, Narra failed in his duty as CTO to solicit other bids from companies who could successfully develop the app at a lower price. Narra then misrepresented and concealed material facts about Indyzen's capabilities, experience, and competitive pricing to induce Parkridge to contract with Indyzen. Thereafter, Narra intentionally failed to act as a diligent CTO would have: he bypassed any testing during App development, failed to provide Parkridge with truthful updates, and lied about the Morfit App's progress. Narra's wrongful conduct therefore arose from his duties as Parkridge's CTO, not duties under the Morfit Agreement. Accordingly, Parkridge's claims are fully viable absent the

7

specific terms of the Morfit Agreeement, and the Court need not interpret or examine in detail the agreement's provisions to resolve the claims against Narra. Allowing Narra to compel arbitration under the Morfit Agreement would therefore be improper.

Second, Narra's wrongful conduct did not "relate to or arise out of" the Morfit Agreement, it occurred before the agreement. *Tracer Research Corp.*, 42 F.3d at 1295 (citing *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983)) ("[A]n arbitration clause that covered disputes 'arising under' an agreement, but omitted reference to claims 'relating to' an agreement, covered only those disputes 'relating to the interpretation and performance of the contract itself.'"). The relevant portion of the arbitration clause in the Software Development and Licensing Agreement states,

> "Except for any dispute arising out of payments due to Company, **any dispute** or disagreement **arising between** the Company and the Customer which is not resolved to the mutual satisfaction of the Company and the Customer within fifteen (15) business days…shall be referred to arbitration in San Jose, CA…"

(Ex. A at p. 6, § 11) (emphasis added.) Here, because the arbitration agreement utilizies the restrictive language of disputes "arising between" the parties, and not "relating to" the Morfit Agreement, it thus covers only those disputes between the parties to the contract and that relate to interpretation and performance of the Morfit Agreement itself. That is not the case with Narra because he is not a party to the agreement. Additionally, Defendant's reliance on *Simula, Inc. v. Autoliv, Inc.*, to argue the applicability of the arbitration clause is broad is misplaced beause that case held that use of "arising **in connection** with" an agreement creates a broad clause, while using "arising under" or "arising out of" "limits the clause to disputes concerning the agreement itself." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999). Here, the Morfit's clause does not cover disputes "in connection with" the agreement, it is limited to disputes "arising between" the parties. Accordingly, the key question

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PARKRIDGE'S CLAIMS

is whether Narra's alleged wrongdoings arise from the duties enumerated within the Parkridge-Indyzen agreement. They do not.

Parkridge further alleges that Narra's wrongful acts *preceded* the agreement, and are also not related to any provision or interpretation of the agreement. *See Britton*, 4 F.3d at 747-48 (where the substance of the allegations against a non-signatory defendant are subsequent to the agreement, the allegations are unrelated to any provision of the contract and cannot be used to compel arbitration). In abbreviated form, the allegations state:

(1) Narra failed in his duty to Parkridge to make reasonable inquiries about other entities that could successfully build the Morfit App at a lower price;
(2) Narra made false representations about Indyzen in order to induce Parkridge to contract with Indyzen;
(3) Narra concealed material information about Indyzen in order to induce Parkridge to contract with Indyzen;
(4) Narra failed to act as a reasonably diligent CTO would when he neglected to require updates relating to the development of the Morfit App.

The sum and substance is that Narra acted fraudulently, and in violation of his duties as CTO of Parkridge. This fraud was ultimately used to *induce* the agreement between Parkridge and Indyzen. Accordingly, Narra's wrongful actions arose *before* the agreement, and also not *because of* the agreement, thus he is not entitled to arbitrate the claims against him.

### III. Indyzen Cannot Compel Arbitration of the Claim for Aiding and Abetting Narra's Breach of Fiduciary Duty as This Claim Arose Before, Not from, the Morfit Agreement.

Because the arbitration clause covers only those disputes that relate to interpretation and performance of the Morfit Agreement, and because Indyzen's aiding and abetting of Narra's breach of fiduciary duty (Count II) falls outside that clause's narrow scope, Parkridge cannot be forced to arbitrate this claim against Indyzen. *See Tracer Research Corp.*, 42 F.3d at 1295 (an arbitration clause that mentions only disputes "arising under," but not "relating to," an agreement covers only disputes that rely on interpretation and performance of the contract itself). Here again, Parkridge asserts

9

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PARKRIDGE'S CLAIMS

Indyzen knew Narra had interests inconsistent with Parkridge's interests and knowingly exploited these conflicts of interest, and participated in Narra's fiduciary breaches in the following ways: Indyzen participated in Narra's breaches when Indyzen **induced** Parkridge to contract with it despite knowing Indyzen could not develop the app; Indyzen further participated in Narra's breaches when it **concealed** its lack of qualifications; and Indyzen participated in Narra's breaches when it **misrepresented** standard prices for app development. Rather, Indyzen's wrongful conduct arose *before* the agreement and in order *to induce* the agreement. Accordingly, Indyzen's aiding and abetting Narra's breach of fiduciary duty is conduct that does not arise from Indyzen's *performance* of the contract itself, thus it falls outside the scope of disputes the Parties agreed to arbitrate.

## IV. The Unjust Enrichment Claim Relates to Payments that are Excluded by the Arbitration Clause.

Count V for unjust enrichment cannot be arbitrated because the Morfit Agreement's arbitration clause excludes this claim from arbitration. *United Steelworkers of Am., AFL-CIO v. Phelps Dodge Corp.*, 764 F.2d 576, 579 (9th Cir. 1985) (citing *United Steelworkers v. Warrior & Gulf*, 636 U.S. 574, 582-83 (1960)) ("[A]rbitration is a matter of contract and therefore the court should not require arbitration of a dispute which a party has not agreed to submit."). The arbitration clause specifically states "***except for*** any dispute ***arising out of payments*** due to [Indyzen]…" (Ex. A at p. 6, § 11) (emphasis added.) Here, the claim in the Complaint explicitly references that "[b]y virtue of receipt of ***payments from Parkridge*** and through Indyzen's failure to deliver the Morfit App…," Indyzen was unjustly enriched. (Compl. ¶ 163) (emphasis added.) Accordingly, Count V for unjust enrichment seeks restitution of payments made to Indyzen: a claim the Parties explicitly sought to exclude from arbitration. Thus, whether the claim references or arise out of the Morfit Agreement is immaterial.

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PARKRIDGE'S CLAIMS

**V.      Mabel Mak Cannot be Compelled to Arbitrate.**

Defendants motion to compel Mabel Mak to arbitrate all claims based on equitable estoppel should be dismissed because the breach of fiduciary duty and fraud claims against Narra, and the aiding and abetting claim against Indyzen, do not arise from the Morfit Agreement, and even if the claim against Indyzen unjust enrichment does, the Morfit Agreement's arbitration clause states that claim is not subject to arbitration.

In the arbitration context, equitable estoppel applies in two cases. In the first, "a nonsignatory may be held to an arbitration clause where the nonsignatory knowingly exploits the agreement…despite never signing [it]." *Mundi*, 555 F.3d at 1046. "Under the second, a signatory may be required to arbitrate a claim brought by a nonsignatory because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the non-signatory's obligations and duties in the contract and the fact that the claims were intertwined with the underlying contractual obligations." *Id.*

To attempt to compel Mak to arbitrate, Defendants rely upon on cases denying motions to compel arbitration and where nonsignatory defendants seek to compel arbitration against signatory plaintiffs. Defendants first cite *Murphy v. DirecTV, Inc.*, where a *nonsignatory* defendant sought to compel arbitration against a *signatory* plaintiff. The defendant in *Murphy*, however, failed to compel arbitration because the court held plaintiffs did not rely on the agreement that contained the arbitraion clause in bringing its claims against the defendant. This case favors Parkridge. Defendants also cite *Mundi v. Union Sec. Life Ins. Co.*, where, again, a *nonsignatory* sought to enforce an arbitration agreement and failed because plaintiff's claims were based solely on the defendant's actions, not provisions of an agreement. This case also favors Parkridge.

Accordingly, those situations are inapposite to those before this Court. Here, a signatory, Defendant, is seeking to compel arbitration against a nonsignatory, Mabel Mak, who is a

11

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PARKRIDGE'S CLAIMS

nonsignatory. And Defendants are required to establish that Mabel Mak exploited the Morfit Agreement when making all claims against Defendants, which they have not done.

Nor could Mabel Mak be said to exploit the Morfit Agreement, despite not signing it, because she did not rely upon it to form her claims against Narra and Indyzen. As discussed in sections II and III above, those claims against Narra and Indyzen do not arise from the Morfit Agreement, but arise from their wrongful conduct independent of and before the agreement was executed. Just as compelling signatory Parkridge to arbitrate those claims would be improper, compelling a *nonsignatory*, Mabel Mak, would be doubly improper.

Nevertheless, even if Mabel Mak "seeks the benefit of the Morfit Agreement" as Defendants claim, the Morfit Agreement specifically excepts claims based on payments to Indyzen, so compelling a signatory or a nonsignatory to arbitrate that issue would be improper. Mabel Mak is therefore not obligated to arbitrate the claims in this matter even if equitable estoppel were to apply.

**VI.     Non-arbitrable Claims Should not be Stayed.**

Because there is no basis for Narra to force Parkridge to arbitrate, and because the claims against Indyzen are not subject to the arbitrataion clause, there is no need for a stay. *United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*, 46 F. App'x 412, 415 FN 10 (9th Cir. 2002) ("the heavy presumption should be that the arbitration and the lawsuit will each proceed in its normal course."). Accordingly, there is no reason to delay resolution of these matters.

Additionally, because the breach of fiduciary duty, fraud, and aiding and abetting claims are not subject to arbitration, a stay of these issues would be particularly unwarranted. *Id.* at 415 ("Expanding the stay, so as to encompass all of the nonarbitrable claims in the case, is [only] appropriate where the arbitrable claims predominate, or where the nonarbitrable claims will depend upon the arbitrator's decision."). Rather, far from "overwhelming" the claims not subject to

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PARKRIDGE'S CLAIMS

1
2
arbitration, the nonarbitrable claims predominate the arbitral ones. A stay would therefore be inappropriate.

3
4
5
6
7
8
Nonetheless, little if anything would be saved by awaiting the outcome of arbitration. A finding by an arbitral tribunal that one defendant breached an agreement or was unjustly enriched does not resolve the issues of whether the other defendant acted fraudulently or in breach of his duties as CTO, and vice versa. Accordingly, waiting for arbitration would not save time or create an efficiency in this suit.

**CONCLUSION**

9
10
11
For the reasons set forth above, Parkridge respectfully requests this Court deny Defendants' motion to compel arbitration and deny Defendants' request to stay Parkridge's claims.

12
13
14   DATED: March 22, 2017                    Respectfully submitted,

15                                            By: /s/Adam Wolek
16                                            Adam Wolek  (Pro Hac Vice)
                                              Brian Noack (Pro Hac Vice)
17                                            adamw@wonoip.com
                                              briann@wonoip.com
18
19                                            LAW OFFICES OF DAVID A. MAKMAN
                                              David A. Makman, SBN 178195
20                                            david@makmanlaw.com

21                                            Attorneys for PLAINTIFFS
22
23
24
25
26
27
28

13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on March 22, 2017, he caused this document to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.

Dated: March 22, 2017                                    WOLEK & NOACK


                                                         By:/s/ Adam Wolek
                                                         Adam Wolek