Mark R. Figueiredo, Esq. (SBN 178850)
Ethan G. Solove, Esq. (SBN 308026)
Jaclyn M. Ford, Esq. (SBN 272641)
STRUCTURE LAW GROUP, LLP
1754 Technology Drive, Suite 135
San Jose, California  95110
Telephone: (408) 441-7500
Facsimile:  (408) 441-7501

Attorneys for Defendants
INDYZEN, INC. and PRAVEEN NARRA KUMAR

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PARKRIDGE LIMITED, a Hong Kong corporation, by Mabel Mak, and MABEL MAK, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>INDYZEN, INC., a California corporation, and PRAVEEN NARRA KUMAR, an individual,<br><br>Defendants. | CASE NO.  16-CV-07387-KAW<br><br>**REPLY IN SUPPORT OF DEFENDANT'S PETITION FOR ORDER TO COMPEL ARBITRATION AND MOTION TO STAY ACTION PENDING ARBITRATION**<br><br>Date:    April 20, 2017<br>Time:   11:00 AM<br>Dept.:   TBD<br>Judge:  Hon. Kandis A. Westmore |

## I.  INTRODUCTION

The most important thing said in Plaintiffs' opposition is what is not said. Plaintiffs do not mention Count IV (Breach of Contract) anywhere in their brief.  Their silence concedes that Count IV should be sent to arbitration.

The Court should send the entire lawsuit to arbitration at the very least because every cause of action depends on or is inextricably intertwined with Count IV.  If an arbitrator rules that Count IV fails because there was no breach of the Morfit Agreement, then none of Plaintiffs' other causes of action can succeed.  Further, for the sake of argument, even if the other claims do not all completely depend on the outcome of Count IV, the arbitrator is still likely to make findings of facts and other determinations in ruling on Count IV that will seriously implicate all

1    of the other claims, since they all are bound up in the Morfit Agreement.  Thus, the entire case

2    should be sent to arbitration to promote judicial efficiency, to avoid duplicating the arbitrator's

3    efforts, and to avoid the risk of contradictory rulings.  However, if the Court is inclined to

4    withhold any causes of action from arbitration, it should stay the litigation pending the outcome

5    of the arbitration.  In that event, the parties will have a final ruling on the causes of action that are

6    submitted to arbitration, which will inform the remainder of the case.

7         In their opposition, Plaintiffs argue that individuals Praveen Narra Kumar ("Narra") and

8    Mabel Mak ("Mak") should not be ordered to arbitration because they did not sign the Morfit

9    Agreement.  These arguments are wrong.  First of all, Narra *did* sign the Morfit Agreement as the

10   CEO of Indyzen, Inc. ("Indyzen"), a fact that undercuts Plaintiffs' entire argument against

11   Narra's ability to compel arbitration.  Even if this were not the case, however, Narra should be

12   allowed to compel arbitration, because he would have been sued by Plaintiffs solely in his

13   capacity as Parkridge Limited's ("Parkridge") CTO.  Thus, agency principles and the doctrine of

14   equitable estoppel would allow Narra to compel arbitration.  Mak should also be sent to

15   arbitration under equitable estoppel because she seeks the benefits of the Morfit Agreement by

16   suing under it while trying to avoid its obligation to arbitrate.  Further, both individuals should

17   also be sent to arbitration in the interest of judicial efficiency.  Thus, the Court should order all of

18   the parties and the entire case to arbitration.

19        Finally, Plaintiffs argue that some of their causes of action deal not with the Morfit

20   Agreement directly, but rather with Defendants' inducement of Plaintiffs to sign it.  As a result,

21   they say that those causes of action should not be governed by the Morfit Agreement's arbitration

22   clause.  This argument is wrong on multiple levels.  Not only is Plaintiffs' case law off base, but

23   the entire lawsuit, including those parts of it that Plaintiffs say deal with inducement, are

24   inextricably bound up in the Morfit Agreement such that its arbitration clause should govern

25   everything.

26   \\\

27   \\\

28   \\\

REPLY IN SUPPORT OF DEFENDANT'S PETITION FOR ORDER TO COMPEL ARBITRATION AND
MOTION TO STAY ACTION PENDING ARBITRATION

## II.    ANALYSIS

### A.    Plaintiffs Concede That Count IV (Breach of Contract) Should Be Sent To Arbitration.

Plaintiffs do not mention Count IV (Breach of Contract) anywhere in their 13-page opposition.  As discussed in Defendants' moving papers, Count IV arises out of the Morfit Agreement because it alleges that Indyzen "breached the [Morfit] Agreement."  (Pet. at page 6, lines 8-9.)  With their silence, Plaintiffs concede this point.  As such, there is no doubt that the Court should send Count IV to arbitration.

### B.    All Other Counts Are Inextricably Related To Count IV (Breach of Contract) So They Should All Be Sent To Arbitration.  If Any Are Not, The Lawsuit Should Be Stayed Pending The Outcome Of Arbitration.

As discussed above in Section II.A, Plaintiffs concede that Count IV should be sent to arbitration.  As such, every other cause of action should be sent with it.

Count IV is the heart of this lawsuit.  It alleges that Defendants breached the Morfit Agreement.  Every other cause of action depends on the outcome of Count IV, or at the very least is bound up in the same facts such that a ruling on Count IV would implicate rulings on the other claims.  (*See* Mot. at page 5, line 3 to page 7, line 10.)  Plaintiffs essentially argue that Defendants got Plaintiffs involved in the Morfit Agreement when Defendants never intended to honor it, and that Defendants have wrongfully benefited from their breach of the Morfit Agreement.  If an arbitrator rules that there has never been a breach of the Morfit Agreement, then all of the other causes of action will fail in turn.  Further, for the sake of argument, even if there is not a direct dependency between Count IV and the other counts, an arbitrator is likely to make rulings and findings of fact in considering Count IV that will implicate all of the other counts.  As such, all of the causes of action are inextricably bound up in Count IV, so they all should be sent to arbitration along with it.

Case law on judicial efficiency also favors this.  (*See, e.g.*, *Alexander v. Gardner-Denver Co.* (1974) 415 U.S. 36, 58 ("Indeed, it is the informality of arbitral procedure that enables it to function as an efficient, inexpensive, and expeditious means for dispute resolution.").  Plaintiffs' arguments against arbitration are built on an incorrect focus on *Tracer Research Corp. v. Nat'l*

*Envtl. Servs. Co* (9th Cir. 1994) 42 F.3d 1292, which dealt with a clause that had different language than the one here, as discussed at length in Section II(D) below.  Further, Plaintiffs' citation to *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.* (1983) 460 U.S. 1, 20 to make the assertion that "[t]he Federal Arbitration Act '*requires* piecemeal resolution when necessary to give effect to an arbitration agreement" is taken out of context.  (Opp. at page 5, lines 12-14.) This case is distinguishable because there, the Court actually acknowledged the "danger of piecemeal litigation" immediately before concluding that they were using it in a rare situation. (*Moses, supra,* 19-20.)

In sum, the Court should send the entire case to arbitration along with Count IV. Plaintiffs have conceded that Count IV should be sent to arbitration.  Judicial efficiency favors having this entire case resolved in one fell swoop along with it.

However, if the Court is inclined to withhold any cause of action from arbitration, it should stay the litigation pending the outcome of the arbitration.  It is not the case that "little if anything would be saved by awaiting the outcome of arbitration" as alleged by Plaintiffs.  (Opp. at page 13, pages 3-4.)  Rather, judicial efficiency strongly favors a stay, because the outcome of all of the causes of action will depend on the outcome of Count IV, or at the very least, the arbitrator will make rulings and determine findings of fact in ruling on Count IV that will implicate all of the other causes of action.  (*See U.S. for Use & Benefit of Newton v. Neumann Caribbean Int'l Ltd.* (1985) 750 F.2d 1422, 1426-27 (stressing the importance of staying a case pending the outcome of arbitration to avoid "duplication of effort" and stressing the common sense of avoiding two tracks.)  Plaintiffs' citation to *United Commc'ns Hub, Inc. v. Qwest Commc'ns* (9th Cir. 2002) 46 F. App'x 412 to argue against the stay is misplaced, since that case actually says that putting in place a stay like this one is only "appropriate where the arbitrable claims predominate, or where the nonarbitrable claims will depend on the arbitrator's decision." As discussed above, this is exactly our situation.  A stay will ensure that the Court does not duplicate the arbitrator's efforts, and will also avoid the risk of contradictory rulings.  It just does not make sense to have this case proceed at the same time on two different tracks.  Thus, if the Court does not send the entire case to arbitration, it should stay the remainder of the case pending

- 4 -

1   the arbitration's outcome.

2       **C.    Every Party To This Lawsuit Should Be Ordered To Arbitration, Regardless**
3            **Of Whether Or Not They Signed The Morfit Agreement.**

4           **1.    Contrary To Plaintiffs' Assertions, Narra Did Sign The Morfit**
                 **Agreement.   But Even If He Had Not, Agency Principles And**
5               **Equitable Estoppel Allow Him To Compel Arbitration.**

6           In their opposition, Plaintiffs argue that Narra should not be ordered to arbitration,

7   because they say that he did not sign the Morfit Agreement.  This assertion is wrong on its face.

8   Narra *did* sign the Morfit Agreement as Indyzen's CEO.  (Morfit Agreement, Page 8, attached as

9   Exhibit B to Plaintiffs' Compl.)  This fact cuts off at the knees Plaintiffs' arguments that Narra

10  cannot compel arbitration.

11          Further, even if Narra had not signed the Morfit Agreement—which he did—Plaintiffs'

12  argument does not take into account that fact that Narra would only be involved in this lawsuit

13  because Plaintiffs would have sued him solely in his role with Parkridge, which *did* sign the

14  Morfit Agreement.  Plaintiffs acknowledge this in their opposition only one page after arguing

15  that Narra should not be allowed to arbitrate, alleging that "[h]ere, Narra's wrongdoings stem

16  from his roles and duties as Parkridge's CTO."  (Opp. at page 7, line 16.)  Agency principles

17  would allow Narra to compel arbitration because Plaintiffs would have sued him solely in his

18  capacity as Parkridge's CTO.  Agency principles allow a non-signor to compel arbitration when

19  plaintiffs have alleged, like here, that "the defendant acted as an agent of a party to an arbitration

20  agreement."  (*Thomas v. Westlake* (2012) 204 Cal. App 4th 605, 614.)  The doctrine of equitable

21  estoppel also would allow Narra to compel arbitration, because he would only be involved in this

22  case as a result of his close relationship with signor Parkridge and because the alleged claims are

23  inextricably intertwined with the underlying contractual obligations.  (*See Mundi, supra,* 555 F.3d

24  1042.)

25          Further, all of the cases used by Plaintiffs to try to argue that Narra cannot compel

26  arbitration are wrong.  In all of their cases, the non-signor who brought the motion to compel was

27  completely unrelated from the contract containing the arbitration clause.  Here, however, Narra is

28  in fact a signor, and is also deeply involved in all of Plaintiffs' allegations, which all involve the

REPLY IN SUPPORT OF DEFENDANT'S PETITION FOR ORDER TO COMPEL ARBITRATION AND
MOTION TO STAY ACTION PENDING ARBITRATION

1   Morfit Agreement.

2       This is not a case where Narra is being sued as an individual because of things he did out

3   in the world on his own.  Rather, Narra is a signor to the Morfit Agreement, contrary to Plaintiffs'

4   assertions.  But even if he were not a signor to the Morfit Agreement, Narra would only have

5   been sued because of allegations that solely relate to his role as Parkridge's CTO.  As a result, no

6   matter how one looks at it, Narra should be allowed to compel arbitration.

7
                        **2.      Mak Should Be Required To Arbitrate The Case Under The Doctrine
8                                 Of Equitable Estoppel.**

9       In their moving papers, Defendants argued that the doctrine of equitable estoppel requires

10  Mak to be ordered to arbitration, because she has sought the benefit of the Morfit Agreement by

11  bringing her entire lawsuit under it.  In their opposition, Plaintiffs have not offered any argument

12  against Defendants equitable estoppel argument.  All that they have done is unsuccessfully try to

13  distinguish Defendants' case law.

14      In reality, Mak should be ordered to arbitration because she has sought the benefits of the

15  Morfit Agreement while trying to avoid its obligations.  All of Plaintiffs' attempts to distinguish

16  Defendants' case law fail.  It is not the case that *Mundi v. Union Sec. Life Ins. Co.* (2009) 555

17  F.3d 1042 or *Murphy v. DirecTV, Inc.* (2013) 724 F.3d 1218 "favor" Plaintiffs.  In fact, the court

18  in *Mundi* specifically said that "a nonsignatory may be held to an arbitration clause where the

19  nonsignatory knowingly exploits the agreement containing the arbitration clause despite having

20  never signed the agreement."  (*Mundi, supra,* at 1046.)  This is exactly our situation.    With

21  regard to *Murphy*, this case was only offered by Defendants as general law on equitable estoppel.

22      The fact of the matter is that Mak has sued Defendants as an owner of Parkridge[1] and

23  brought each of her causes of action along with Parkridge seeking the benefit of a contract that

24  Parkridge entered into for her gain.  Thus, the doctrine of equitable estoppel requires that Mak

25  arbitrate her claims.

26  ///
    ///
27

28  ---
    [1] Plaintiffs' opposition states that Randy Dobson is the owner of Parkridge.  (Opp. at page 2, line 24.)  But this Court
    need not resolve this factual discrepancy now.

REPLY IN SUPPORT OF DEFENDANT'S PETITION FOR ORDER TO COMPEL ARBITRATION AND
MOTION TO STAY ACTION PENDING ARBITRATION

3. **In Addition To The Reasons Set Forth In The Previous Two Sections, The Court Should Also Order Mak And Narra To Arbitration For Judicial Efficiency.**

As discussed above in Sections II.C(1-2), Mak and Narra should be sent to arbitration. Narra is a signor of the Morfit Agreement and is clearly allowed to compel arbitration under it. Further, even if this were not the case, the Court should still send them both to arbitration under agency principles and equitable estoppel.  On top of all of this, the Court should order Mak and Narra to arbitration for all the reasons of judicial efficiency discussed in the sections above.

D. **The Remainder Of Plaintiffs' Arguments Fail.**

The remainder of Plaintiffs' opposition focuses primarily on assertions that some of the events alleged in Plaintiffs' lawsuit happened before the Morfit Agreement was signed, when Defendants allegedly induced Plaintiffs into signing up for an allegedly bad contract.  However, these arguments fail for several reasons.  To begin with, the case law cited by Plaintiffs in support of this argument is wrong.  Plaintiffs try to rely on *Britton v. Co-op Banking Group* (9th Cir. 1993) 4 F.3d 742 to argue that the claims in their complaint that deal with inducement to contract fall outside of the scope of the arbitration clause.  (Opp. at page 9, lines 4-6.)  However, as acknowledged by Plaintiffs, the Court in *Britton* limited its analysis to acts that happened *after* (i.e. "subsequent to") the Agreement was entered into, not *before* as would be relevant for Plaintiffs' inducement claims.  (*Britton*, *supra* at 748.)  Further, *Britton* was analyzing a situation in which the parties' dispute was completely unrelated to the agreement with the arbitration provision.  Here, as discussed throughout this reply, Defendants' moving papers, and below, Plaintiffs' inducement claims are part and parcel to the Morfit Agreement, so *Britton* is not relevant.

The reality is that this entire case is about the Morfit Agreement.  The cases that Plaintiffs use in their attempts to argue the contrary are all wrong.  The respective courts in each case only ruled against arbitration because the agreements containing the arbitration clauses were irrelevant to the causes of action.  (*See Murphy v. DirecTV, Inc.* (9th Cir. 2013) 724 F.3d 1218, 1230 (finding that the agreement with the arbitration clause was "factually irrelevant to" plaintiffs' claims); *Palmer Ventures LLC v. Deustche Bank AG* (5th Cir. 2007) 254 Fed. Appx. 426, 432 (an

REPLY IN SUPPORT OF DEFENDANT'S PETITION FOR ORDER TO COMPEL ARBITRATION AND MOTION TO STAY ACTION PENDING ARBITRATION

1  out-of-circuit case finding that the arbitration document was not "a part of the Plaintiffs' causes of

2  action."); *Goldman v. KPMG LLP* (2009) 173 Cal. App. 4th 209, 218 (a state court case finding

3  that the claims were "unrelated" to the agreements with the arbitration clauses.)

4          Plaintiffs are wrong to say that the current case is like any of these other cases, when here

5  the heart of the case is the Morfit Agreement.  Again, the term "Morfit" appears in the complaint

6  over 80 times.  Contrary to Plaintiffs' assertions, every Count references the Morfit Agreement,

7  and thus, none is viable without reference to or interpretation of it.  One only needs to look at the

8  Prayer in the Plaintiffs' complaint to see how central the Morfit Agreement is to the case, as

9  Plaintiffs only request damages that allegedly stem from breach of the Morfit Agreement,

10  including an injunction to require Defendants to give Plaintiffs the Morfit App and attorneys fees

11  as "authorized by the [Morfit] Agreement."  (Compl. at 27, lines 1-2.)  Moreover, Parkridge's

12  references to "Intellectual Property" as stated in Requests for Relief #3 and #4, and "Attorneys'

13  Fees" as stated in Request #5, are only understandable when defined by interpreting the Morfit

14  Agreement.  Thus, despite Plaintiffs' efforts to try to split hairs about timing, the reality is that

15  this entire case is about the Morfit Agreement.

16          Second, the language of the Morfit Agreement's arbitration clause is very broad.  It states

17  that "*any dispute or disagreement* arising between" the parties should be sent to arbitration.

18  (Compl., **Exhibit B**, Page 6, ¶ 11 (emphasis added).)  It does not limit arbitration to only the

19  disputes related to the Morfit Agreement.  Nonetheless, despite this broad language, Defendants

20  are not even arguing that this arbitration clause should bind Plaintiffs to something unrelated to

21  the Morfit Agreement.  Rather, Defendants seek to hold Plaintiffs to the dispute resolution

22  method which was agreed upon when the Morfit Agreement was signed.

23          Plaintiffs present an argument that parses out the phrase "relate to or arise out of," and that

24  relies on *Tracer v. Research Corp v. Nat'l Environmental Services Co.* (9th Cir. 1994) 42 F.3d

25  1292, 1295 while trying to distinguish Defendants' use of *Simula, Inc. v. Autoliv, Inc.* (9th Cir.

26  1999) 175 F.3d 716.  (Opp. at page 8, lines 4-28 to page 9, 1-18.)  Plaintiffs reliance on *Tracer* is

27  wrong, because the arbitration clause discussed in that case is different than the one at bar.  There,

28  the operative language was "arising *out of* this Agreement," whereas here, the arbitration clause

REPLY IN SUPPORT OF DEFENDANT'S PETITION FOR ORDER TO COMPEL ARBITRATION AND
MOTION TO STAY ACTION PENDING ARBITRATION

1  uses "arising *between* [Indyzen] and [Parkridge]. (*compare Tracer, supra,* at 1295 to the Morfit

2  Agreement Arbitration Clause (emphases added).)  The language in this case is broader and

3  encompasses claims that might arise between Parkridge and Indyzen that may or may not be

4  related to the Morfit Agreement.  Thus, *Tracer* has no bearing on this case.  Further, with respect

5  to *Simula, Inc.*, Defendants used that case in their moving papers to show that while Courts have

6  interpreted the phrase "arising in connection with" broadly, the language "arising between" in this

7  case is even broader. (*compare Simula, Inc.* (9th Cir. 1999) 175 F.3d 176, 721 to the Morfit

8  Agreement Arbitration Clause.)  This point is further backed by other case law. (*See, e.g.*

9  *Pyramid Travel, Inc. v. Sri Lankan Travel, Inc.* (C.D.C.A. 2000) 2000 WL 34017119, at *5

10  (characterizing an arbitration clause using the language "arising between the parties" as "even

11  broader" than the "arising in connection" language from *Simula* or the narrower "arising out of"

12  language of *Tracer*);  *Local Union No. 721 v. Needham Packing Co.* (1964) 376 U.S. 247, 251;

13  *Amalgamated Clothing and Textile Workers Union, AFL-CIO-CLC v. Ratner Corp.* (9th Cir.

14  1979) 602 F.2d 1363, 1371 (*Local Union No. 721* and *Ratner* both stand for the proposition that

15  an arbitration clause covering all disputes arising between parties is very broad).

16       In sum, Plaintiffs' inducement argument does not hold water.   Plaintiffs' case law is not

17  on point and the entire lawsuit is bound up with the Morfit Agreement, which provides arbitration

18  as the sole means of dispute resolution.

19                     **III.    CONCLUSION**

20       Plaintiffs concede that the heart of this case, Count IV, should be sent to arbitration.  If an

21  arbitrator rules that Count IV fails because there was no breach of the Morfit Agreement, then the

22  remainder of the lawsuit will also fail because it all depends on Count IV succeeding, or at the

23  very least, the arbitrator is likely to make rulings and findings that will seriously implicate the

24  other causes of action.  Judicial efficiency and avoidance of the risk of contradictory rulings also

25  favor sending the entire case to arbitration.  However, if the court is inclined to withhold any

26  cause of action from arbitration, it should stay the litigation pending the outcome of the

27  arbitration.  This will ensure that the Court does not duplicate the arbitrator's efforts and will

28  prevent the risk of contradictory rulings.

REPLY IN SUPPORT OF DEFENDANT'S PETITION FOR ORDER TO COMPEL ARBITRATION AND
MOTION TO STAY ACTION PENDING ARBITRATION

For the foregoing reasons, Defendants respectfully request that the Court grant their Petition for Order Compelling Arbitration and concurrently filed Motion to Stay Action Pending Arbitration by sending the entire case to arbitration, or in the alternative, sending some of the claims to arbitration while staying the litigation pending the arbitration's outcome.

Dated: March 29, 2017                          STRUCTURE LAW GROUP, LLP


                                               By: /s/ Ethan G. Solove
                                               Ethan G. Solove, Esq.
                                               Attorneys for Defendants
                                               INDYZEN, INC. and PRAVEEN NARRA
                                               KUMAR

REPLY IN SUPPORT OF DEFENDANT'S PETITION FOR ORDER TO COMPEL ARBITRATION AND MOTION TO STAY ACTION PENDING ARBITRATION