# Exhibit E

# Taft/

Adam Wolek
P 312.836.4063
F 312.527.4011
C 312.860.9006
awolek@taftlaw.com

Taft Stettinius & Hollister LLP
111 East Wacker, Suite 2800 / Chicago,
IL 60601 USA
Tel: 312.527.4000 / Fax: 312.527.4011
www.taftlaw.com

October 5, 2017

*Via Email*
Gary L. Benton, FCIArb, FCCA
Gary Benton Arbitration
228 Hamilton Avenue, Third Floor
Palo Alto, California 94301
gary@garybentonarbitration.com

Re:   *Parkridge Ltd., et al. v. Indyzen, Inc., et al.*, AAA Case No.: 01-17-0003-4918

Dear Mr. Benton:

Per your September 23, 2017 email to the parties, Claimants submit this letter in response to Respondents' October 2, 2017 letter and "Sur-Opposition."

Respondents' Sur-Opposition does not address the crux of Claimants' Motion to Dismiss: whether this Tribunal may force separate entities that are not parties to any arbitration agreement to arbitrate the disputes between Parkridge, Praveen Narra and Indyzen. (Nor does it discuss whether Respondents' counterclaims are subject to the arbitration clause or are properly pled). At its core, this dispute arises because Parkridge Ltd. hired Praveen Narra and later Indyzen, Inc. to develop a mobile app, Parkridge and Indyzen entered into the Morfit Agreement, Indyzen failed to produce a working app, and Parkridge discovered it had been defrauded by Narra. The Non-Signatories were not parties to the Morfit Agreement and played no role in the underlying events. But rather than argue the law or facts as to why the corporate veils of the Non-Signatory Counter-Respondents should be pierced, Respondents rely on hyperbole and misinformation as support for this Tribunal's jurisdiction over these entities. In short, nothing in the Sur-Opposition supports binding the Non-Signatories to the Morfit Agreement and requiring them to arbitrate the counterclaims.

A.   **The Sur-Opposition is Improper.**

At the onset, because Claimants' Reply did not raise any new arguments or new evidence to support piercing the corporate veils, Respondents' Sur-Opposition is improper and should be ignored. *See Jordan v. Terhune*, 2009 WL 276764, *3 (E.D. Cal. Feb. 5, 2009) ("Defendants' reply does not present new arguments nor new evidence . . . The surreply is improper.").

      Further, Respondents' claims of spoliation and concealment of evidence are merely a mud-slinging campaign against Claimants and counsel. Putting aside that "evidence" Respondents already have in their possession (i.e., all of the materials attached to the Rogers' declaration) logically *cannot* be spoiled as Respondents already have it in their possession, Respondents' arguments to this point are misleading or just wrong.

      *First*, Respondents claim that counsel or Claimants "lied about the very existence of CMG." That is simply untrue. Claimants reported in a September 1, 2017 email to this Tribunal that California Management Group "is not a legal entity[, but] . . . simply a general name used in Vietnam, referring to a range of brands and portfolio operating alongside the California Fitness & Yoga gym centers." This information is accurate. Counsel later learned of a dormant entity named CMG.ASIA Ltd. However, CMG.ASIA Ltd. is an inactive company, and was established to be a holding company for business investments. It was used for one investment in a health care start-up company unrelated to this dispute. <u>It does not own the website</u> "cmg.asia", <u>or any brands</u> associated with CMG or CMG.Asia as Respondents imply. It is also not associated with CFYC or California Management Group/CMG. Because this entity is not named as a party in this dispute and is unrelated to any entity named by Respondents, information about this entity is irrelevant to these proceedings.

      *Second*, Respondents somehow equate editing a Facebook page or a website with spoliation. That is nonsensical. Prohibiting a business from modifying its public marketing is not only legally unsound, it would be untenable and oppressive. To be sure, Claimants understand and take their responsibility to preserve evidence related to this dispute seriously, and are preserving all evidence. The edits (that Respondents call "new evidence") were simply to remove residual references of a failed product that never launched, i.e. the Morfit App. Indeed, why would anyone *want* to keep advertising a product that failed and that they never released? Respondents' argument to the contrary misconstrues this Tribunal's litigation hold order, and misunderstands what constitutes spoliation of evidence.

      *Third*, neither the Morfit App nor its source code were provided to Parkridge (or any Counter-Respondent), and therefore could not be "renamed" as Respondents claim. After Narra failed to produce a working Morfit App, Mr. Dobson engaged another company to create a workable app. The app was called F8Fit during the development process. Once developed, the F8Fit app was licensed to CFYC for testing in its gyms, which also markets as "LEEP" and is licensed by CFYC. Renaming apps during development is normal, and is certainly not spoliation or concealment of evidence.

      *Lastly*, the purported "new" evidence Respondents attach to their Sur-Opposition consists of information that is publically available and easily accessible on the internet. If this information was truly as important as Respondents now claim, they should have raised it in their Response. Their failure to do so is an attempt at sand-bagging. *See Provenz v. Miller,* 102 F.3d 1478, 1483 (9th Cir. 1996) ("Where new evidence is presented in a reply . . . the district court should not consider the new evidence without giving the non-movant an opportunity to respond."). Regardless, this purported "new" evidence does not change the analysis and ultimate conclusion

Gary L. Benton
October 5, 2017
Page 3

that Respondents' counterclaims are outside the arbitration provision, and that this Tribunal lacks jurisdiction over the Non-Signatories.

**B.     Parkridge and the Non-Signatories Are Separate, Independent Entities.**

As separate entities, Parkridge Ltd. and each Non-Signatory are presumed to have separate and distinct identities. *Rhodes v. Sutter Health*, 949 F.Supp.2d 997, 1009 (E.D. Cal. 2013) (it is a "**heavy burden**" for a party to rebut this presumption and "hold multiple corporate entities liable as a single entity.") (emphasis added). Parkridge and the Non-Signatories are, in fact, distinct legal entities; each follows the required corporate formalities, does not commingle funds, has not diverted funds or assets without authorization, has been properly capitalized, has maintained its own bank account, and has filed its own tax returns. *See* Non-Signatory Affidavits (attached to Reply as Exhibits A-D). Nothing in the purported "new" evidence presented in the Sur-Opposition challenges this fact.

As noted previously, California Management Group ("CMG") is a general name referring to a range of brands and portfolios operating alongside the CFYC gyms. Essentially, CMG is an association or network of independent companies who have strategic partnerships with one another. None of exhibits from the Rogers' declaration contradict that. The CMG.ASIA website is the website for CMG. Exhibit E contains pictures from a CMG Summit, at which members of the various companies (depicted throughout the exhibit) gathered to share industry insight and knowledge. Although Mr. Dobson may have some involvement in some of the CMG-associated companies, for others he has no involvement at all. For instance, UFC Gym is a CMG-associated company and strategic partner, but CMG does not own nor is an alter ego of UFC. Other examples of companies that have an association with, but are not owned by, CMG are its institutional and financial partners, TechcomBank, Mizuho, and HDBank.

At bottom, neither Mr. Dobson's involvement with any Non-Signatory nor their association with the CMG network is a basis on which to pierce the corporate veil and treat these separate and independent legal entities as a single entity.[1] Respondents have failed to carry their heavy burden of proving that the Counter-Respondents and Parkridge have ignored corporate formalities or otherwise abused the corporate form.

**C.     The Non-Signatories Are Not Parties to the Morfit Agreement and There is No Basis for this Tribunal to Bind them to the Agreement's Arbitration Provision.**

The Morfit Agreement is between Indyzen and Parkridge. The Non-Signatories are not parties to the Agreement; indeed, they have never entered into *any* agreement or agreed to arbitrate *any* claims with Indyzen or Narra. Respondents do not contest this fact, nor does any of their "new" evidence challenge this point. Nonetheless, Respondents now attempt to use Facebook posts,

---

[1] By Respondents' logic, this tribunal would have jurisdiction over UFC for these disputes because it is also a CMG-affiliated company, despite it also not being a party to the Morfit Agreement.

Gary L. Benton
October 5, 2017
Page 4

CMG.ASIA's website, and pictures of Morfit events to insinuate that CFYC or CMG.ASIA owned the Morfit App or were a part of the Morfit Agreement. Neither scenario is true.

CFYC owns gyms throughout Vietnam and is a part of the CMG network. Parkridge benefitted significantly from the industry knowledge of the CMG-associated companies. The prototype Morfit App was tested at CFYC gyms. This was a logical testing ground, and a potential collaborator with the CMG network. That does not affect, however, that Parkridge and CFYC were at all times operating as separate and independent entities.

In proper context[2], Exhibit E to Rogers' declaration depicts the CMG Summit where Narra, as CTO of Parkridge, was asked to demonstrate the Morfit App. The demonstration proved unsuccessful because the Morfit App did not work. Exhibit I to Rogers' declaration references and depicts in Facebook posts and pictures Parkridge's attempted launch of the Morfit App at CFYC. At the launch event, Narra, as CTO of Parkridge, was to present the Morfit App to CFYC and its trainers. Indeed, the picture of the watch with the Morfit App prototype was ***of Respondent Praveen Narra's*** wrist. Mr. Dobson and Dane Fort, the CEO of CFYC, were also present at this event. The Morfit App did not work and the launch failed. In short, these pictures do not show any ownership of the Morfit App by CFYC/CMG, but merely a stage to announce the App's (failed) launch. The relationship between CFYC and Parkridge fell apart as a result of this failed launch, and Parkridge's relationship with Narra terminated shortly thereafter. Ultimately, Parkridge paid Narra and Indyzen a significant sum to create the Morfit App, yet they refused to show the work that was done on the App.

It is not disputed that CFYC worked with Parkridge to test the Morfit App. These circumstances, however, do not make CFYC/ CMG owners of the Morfit App or signatories to the Morfit Agreement. In sum, no exception applies to bind the Non-Signatories to the Morfit Agreement's arbitration provision. Therefore, they must be dismissed from this arbitration.

Yours truly,

*(signature)*

Adam Wolek

---

[2]   For additional context about the Rogers' Declaration Exhibits and explanation of the underlying circumstances leading to this dispute, attached hereto is an Affidavit of Mr. Dobson (Exhibit A) and an Audio Recording of Mr. Dobson (Exhibit B).