Adam Wolek (*pro hac vice*)
Taft Stettinius & Hollister LLP
111 E. Wacker Drive, Suite 2800
Chicago, Illinois 60601
Tel: 312.836.4063
Fax: 312.966.8598
awolek@taftlaw.com

DAVID A. MAKMAN (SBN 178195)
david@makmanlaw.com
LAW OFFICES OF DAVID A. MAKMAN
655 Mariner's Island Blvd, Suite 306
San Mateo, CA 94404
Telephone: (650) 242-1560
Facsimile: (408) 716-3052

*Attorneys Appearing in a Limited Capacity for Counter-Defendants Boon Global Limited, F8 Vietnam Company Limited, California Fitness & Yoga Centers, California Management Group, and Randy Dobson*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

PARKRIDGE LIMITED, a Hong Kong corporation, by Mabel Mak, and MABEL MAK, an individual,

                      Plaintiffs,

v.

INDYZEN, INC., a California corporation, and PRAVEEN NARRA KUMAR, an individual,

                      Defendants.

INDYZEN, INC., a California corporation, and PRAVEEN NARRA KUMAR, an individual,

                      Counter-Plaintiffs,

v.

PARKRIDGE LIMITED, a Hong Kong corporation, BOON GLOBAL LIMITED, a Hong Kong corporation, F8 VIETNAM COMPANY LIMITED, a Vietnam company, CALIFORNIA FITNESS & YOGA CENTERS, an entity of unknown form, CALIFORNIA MANAGEMENT GROUP, an entity of unknown form, and RANDY DOBSON, an individual,

                      Counter-Defendants.

**Case No.** 16-cv-07387

**RANDY DOBSON'S MOTION TO DISMISS INDYZEN'S PETITION TO COMPEL ARBITRATION PURSUANT TO FRCP 12(b)(2), 12(b)(3), AND (12)(b)(6)**

Date:     February 16, 2018
Time:    9:00 AM
Dept.:    Courtroom 5, 2nd Floor
Judge:   Hon. Jeffrey S. White

### MOTION TO DISMISS PETITION TO COMPEL ARBITRATION

Counter-Defendant Randy Dobson ("Mr. Dobson"), pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6), moves to dismiss the Petition to Compel Arbitration (the "Petition") filed by Counter-Plaintiff Indyzen, Inc. ("Indyzen"), for the reasons set forth below. Mr. Dobson notices this Motion for February 16, 2018 at 9:00 A.M., which is the date set by this Court for hearing on the Petition. *See* Status Report, ECF No. 42.

Mr. Dobson seeks that this Court dismiss with prejudice the Petition pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12 (b)(3) because this Court does not have personal jurisdiction and venue over Mr. Dobson. Furthermore, to the extent that this Court has jurisdiction, Mr. Dobson seeks a dismissal of the Petition pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to properly state a claim, and because Indyzen's claims against Mr. Dobson falls outside the scope of the arbitration clause agreed to by Indyzen and Parkridge Limited ("Parkridge").

# TABLE OF CONTENTS

SUMMARY OF ARGUMENT ...............................................................................................vi

I.    INTRODUCTION ...................................................................................................1

II.   STATEMENT OF FACTS ......................................................................................1

    A.    Background ..................................................................................................1

    B.    Procedural History ......................................................................................2

III.  ARGUMENT ..........................................................................................................3

    A.    There Is No Basis for Personal Jurisdiction over Mr. Dobson Because He Did Not Consent to Jurisdiction and Has No Contacts with California. .........................3

        1.    This Court Does Not Have General Jurisdiction over Mr. Dobson. ..............3

        2.    Specific Jurisdiction Does Not Exist over Mr. Dobson. ...............................4

    B.    The Petition Should Be Dismissed for Improper Venue. ...........................................6

    C.    Indyzen's Allegations to Compel Mr. Dobson to Arbitration Do Not Meet Pleadings Standards. ..........................................................................6

    D.    The Petition Fails Because Mr. Dobson Was Not a Party to the Morfit Agreement and Never Agreed to Arbitration.............................................................7

        1.    Indyzen Erroneously Claims There Is a Presumption in Favor of Compelling Non-signatories to Arbitration. ..................................................8

        2.    Mr. Dobson Cannot Be Compelled to Arbitrate Because He Is Not Personally a Signatory to the Morfit Agreement or any Agreement to Arbitrate with Indyzen. ...................................................................8

        3.    The Morfit Agreement's Arbitration Clause Is Narrow and Only Applies to Disputes "Between" Parkridge and Indyzen, Not Non-signatories. ..........8

        4.    Arbitration Cannot Be Compelled Against Mr. Dobson Under an Alter Ego Theory.................................................................................10

        5.    Indyzen's Narrow Equitable Estoppel Argument Should Be Rejected Because Mr. Dobson Did Not Exploit the Morfit Agreement. ....................12

        6.    Mr. Dobson's Status As An Agent of Parkridge Is Not A Sufficient Basis On Which To Compel Him To Participate In Arbitration. ................13

        7.    Mr. Dobson Is Not a Third Party Beneficiary of the Morfit Agreement. ....15

    E.    The Arbitrator Does Not Have the Authority to Decide Whether Non-Parties to an Arbitration Agreement Are Within Its Jurisdiction. ...........................................15

## TABLE OF AUTHORITIES

**Cases**

*Adobe Sys. Inc. v. Trinity Software Distrib., Inc.*, No. C. 12-1614 SI,
2012 WL 3763643 (N.D. Cal. Aug. 29, 2012) ........................................................... 4, 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................... 12

*AT&T Techs., Inc. v. Commc'ns Workers*,
475 U.S. 643 (1986) .................................................................................................. vi, 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................... 12

*Benasra v. Marciano*,
112 Cal. Rptr. 2d 358 (Cal. Ct. App. 2001) ............................................................ vi, 14

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ...................................................................................................... 5

*Cape Flattery Ltd. v. Titan Mar., LLC*,
647 F.3d 914 (9th Cir. 2011) ................................................................................ 12, 15

*Comer v. Micor, Inc.*,
436 F.3d 1098 (9th Cir. 2006) ................................................................................... 12

*Daimler AG v. Bauman*,
134 S. Ct. 746 (2014) ................................................................................................... 3

*Exigen Properties, Inc. v. Genesys Telecommunications Laboratories, Inc.*, No. A140081,
2016 WL 520283 (Cal. Ct. App. Feb. 9, 2016) .......................................................... 13

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995) .................................................................................................... 15

*Frank Gari Prods., Inc. v. Smith*, CV 12-248-GHK (FFMx),
2012 WL 12895672 (C.D. Cal. June 15, 2012) ......................................................... vi, 6

*Fresno Motors, LLC v. Mercedes-Benz USA, LLC*, No. 1:10CV012 AWI DLB,
2010 WL 1136192 (E.D. Cal. Mar. 22, 2010) .............................................................. 9

*Fund Raising, Inc. v. Alaskans for Clean Water, Inc.*, No. CV 09-4106 AHM (VBKx),
2009 WL 3672518 (C.D. Cal. Oct. 29, 2009) .............................................................. 6

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) ..................................................................................................... 3

*Grey v. Am. Mgmt. Servs.*,
139 Cal. Rptr. 3d 210 (Cal. Ct. App. 2012) ........................................................... 8, 15

*Harris v. Superior Court*,
233 Cal Rptr. 186 (Cal. Ct. App. 1986) ..................................................................... 14

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002) ...................................................................................................... 15

*Levy v. State Farm Mut. Auto. Ins.*,
58 Cal. Rptr. 3d 54 (Cal. Ct. App. 2007) ..................................................................... 7

*Marsch v. Williams*,
    28 Cal. Rptr. 2d 398 (Cal. Ct. App. 1994) ............................................................. 7

*Mihlon v. Super. Ct.*,
    215 Cal. Rptr. 442 (Cal. Ct. App. 1985) ............................................................... 5

*Mundi v. Union Sec. Life Ins.*,
    555 F.3d 1042 (9th Cir. 2009) ..........................................................vi, 8, 9, 12

*Nielson v. Union Bank of Cal., N.A.*,
    290 F. Supp. 2d 1101 (C.D. Cal. 2003) ........................................................... 10, 11

*Pavlovich v. Super. Ct.*,
    58 P.3d 2 (Cal. 2002) ............................................................................. 3

*Peralta v. Cal. Franchise Tax Bd.*,
    124 F. Supp. 3d 1000 (N.D. Cal. 2015) ................................................................ 7

*Pestmaster Franchise Network, Inc. v. Mata*, No. 16-cv-7268-EMC,
    2017 WL 1956927 (N.D. Cal. May 11, 2017) .......................................................... 3

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*,
    338 F.3d 773 (7th Cir. 2003) ........................................................................ 4

*Riddle v. Leuschner*,
    335 P.2d 107 (Cal. 1959) ........................................................................... 10

*Sandoval v. Ali*,
    34 F. Supp. 3d 1031 (N.D. Cal. 2014) ........................................................... 10, 11

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ........................................................................ 4

*Sonora Diamond Corp. v. Super. Ct.*,
    99 Cal. Rptr. 2d 824 (Cal. Ct. App. 2000) ........................................................... 10

*Spinks v. Equity Res. Briarwood Apts*,
    90 Cal. Rptr. 3d 453 (Cal. Ct. App. 2009) .......................................................... 15

*Thomas v. Westlake*,
    139 Cal. Rptr. 3d 114 (Cal. Ct. App. 2012) ......................................................... 14

*Tracer Research Corp. v. Nat'l Env. Servs. Co.*,
    42 F.3d 1292 (9th Cir. 1994) ....................................................................... 13

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
    363 U.S. 574 (1960) ................................................................................ 15

*Wistron Corp. v. Phillip M. Adams & Assocs., LLC*, 10-cv-4458 EMC,
    2011 WL 4079231 (N.D. Cal. Sept. 12, 2011) ......................................................... 7

**Statutes**

28 U.S.C. § 1391 ......................................................................................... 6

9 U.S.C. § 4 ............................................................................................. 6

9 U.S.C. § 6 ............................................................................................. 1

**Rules**

Civil L.R. 7.3(c) ................................................................................................................. 1

Federal Rules of Civil Procedure 12(b)(2) ....................................................................... vi, 1

Federal Rules of Civil Procedure 12(b)(3) ....................................................................... vi, 1

Federal Rules of Civil Procedure 12(b)(6) ....................................................................... vi, 1

**SUMMARY OF ARGUMENT**

Indyzen brought its Petition to force Mr. Dobson, an individual domiciled in Vietnam, to arbitrate claims under an agreement Mr. Dobson signed only in his official capacity as an agent of the signatory party, Parkridge (the "Morfit Agreement"). This Court should dismiss the Petition under F.R.C.P. 12(b)(2) and (b)(3) due to lack of personal jurisdiction and proper venue. Mr. Dobson is not a citizen of California, does not conduct business in California, and has nothing personally to do with the Morfit Agreement, a contract that never refers to Mr. Dobson individually, nor provides him any substantive rights. California's long-arm statute cannot confer jurisdiction over Mr. Dobson under these circumstances.

Furthermore, to the extent that jurisdiction exists, Mr. Dobson nevertheless should be dismissed under F.R.C.P. 12(b)(6). Indyzen has not alleged any cognizable claim against Mr. Dobson. *See Frank Gari Prods., Inc. v. Smith*, CV 12-248-GHK (FFMx), 2012 WL 12895672, at *4 (C.D. Cal. June 15, 2012) (dismissing petition to compel arbitration for failure to plead a claim). Moreover, by its very terms, the Agreement's arbitration clause is narrow and only applies to disputes "between" Indyzen and Parkridge. This express language excludes claims against Mr. Dobson. *See Mundi v. Union Sec. Life Ins.*, 555 F.3d 1042, 1045-47 (9th Cir. 2009) (rejecting petition to compel non-signatory to arbitration based upon a similar arbitration clause). Finally, Indyzen has not shown any equitable reason for compelling Mr. Dobson to arbitration. He is not an alter ego of Parkridge, nor a third party beneficiary of the Agreement. Although Mr. Dobson signed the Morfit Agreement in his official capacity, as CEO of Parkridge, this status is insufficient to compel arbitration against him personally. *Benasra v. Marciano*, 112 Cal. Rptr. 2d 358, 361-62 (Cal. Ct. App. 2001) (agent may be permitted to relinquish his right to a jury trial, but cannot be compelled to do so). For these reasons, this Court should dismiss Mr. Dobson from this case with prejudice. *See AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.").

## I.       INTRODUCTION

Counter-Defendant Mr. Dobson,[1] through his undersigned counsel, submits this Motion to Dismiss Indyzen's Petition. Mr. Dobson brings this Motion pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6).[2]

## II.      STATEMENT OF FACTS

### A.     Background

Parkridge was founded in 2013 to create a mobile software application combing health and fitness information with social media networking. Possessing limited technical expertise internally, Parkridge hired Praveen Narra Kumar ("Narra"), due to Narra's self-proclaimed experience in software development, as Chief Technology Officer ("CTO") to lead its mobile app development. After assuming his duties as CTO of Parkridge, Narra hired his own software company, Indyzen, to develop the mobile app. Narra helped Parkridge negotiate a contract with Indyzen, including providing the specifications for the mobile app and directing Parkridge as to necessary terms in the contract. On January 5, 2015, Parkridge signed a contract with Indyzen for development of the mobile app, known as the Morfit Agreement.

The result was disastrous for Parkridge. The mobile app, which was later known as Morfit (the "Morfit App"), did not work and was grossly inferior to comparable apps in the industry.

---

[1]   The newly-added entities named in Indyzen's ostensible Petition are only appearing in a limited capacity, without prejudice to any defenses or arguments, and expressly reserve all rights including, but not limited to, challenging personal jurisdiction, the propriety of the jurisdiction before this Court, the propriety of the disputes before this Court, the propriety of the process, and the sufficiency of the allegations made.

[2]   Indyzen incorrectly filed its Petition as a Motion to Compel, whereas Petitions to Compel Arbitration constitute pleadings under 9 U.S.C. § 6 of the Federal Arbitration Act ("FAA"). Because Indyzen's Petition constitutes a "pleading", Mr. Dobson's Motion to Dismiss is an initial Motion which under Civil L.R. 7.3(c) further permits a reply. Accordingly, Mr. Dobson respectfully reserves the right to reply to any opposition to its Motion to Dismiss pursuant to the content and timing requirements of Civil L.R. 7.3(c).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Moreover, Indyzen charged Parkridge exorbitant development prices. In short, Narra abused his position as Parkridge's CTO to siphon money from Parkridge to benefit himself and his company, Indyzen.

**B.      Procedural History**

Parkridge filed suit against Narra and Indyzen (collectively, "Defendants") in the Northern District of California on December 29, 2016. *See* Compl., ECF No. 1. Defendants then moved to compel arbitration as to Parkridge and Mabel Mak (collectively, "Plaintiffs"), Parkridge's sole shareholder, and stay the case. *See* Mot. to Compel Arb., ECF No. 12; Mot. to Stay, ECF No. 13. Plaintiffs opposed arbitration, particularly as to their claims against Narra, because the Morfit Agreement, which contained the arbitration provision, was only between Parkridge and Indyzen. The magistrate judge compelled arbitration and stayed the case, ruling that Plaintiffs' claims against Narra may have arisen out of his role under the Morfit Agreement, and the Arbitrator could determine the extent of his jurisdiction.

Accordingly, Plaintiffs filed a demand with the American Arbitration Association on June 8, 2017. Defendants filed counterclaims naming five additional entities—Boon Global Limited ("Boon"), F8 Vietnam Company Limited ("F8"), California Fitness & Yoga Centers ("CFYC"), California Management Group, and Mr. Dobson in his individual capacity (collectively, the "Non-signatories")—who were not parties to the Morfit Agreement. Plaintiffs and the Non-signatories[3] moved to dismiss the counterclaims because: (1) they were outside the scope of the arbitration provision; (2) the Non-signatories were neither parties to nor bound by the Morfit Agreement; and (3) the counterclaims failed to state a claim. *See* Mot. to Dismiss Countercls., Ex. A.

_____

[3]   The Non-signatories appeared in the arbitration for the limited purpose of contesting the arbitral jurisdiction.

On November 6, 2017, the Arbitrator dismissed the five Non-signatories. *See* Proced. Order No. 2 at 11, Ex. B. Indyzen subsequently filed a Petition to Compel Arbitration against the Non-signatories in the stayed federal case. *See* Pet. to Compel Arb., ECF No. 32. As the Non-signatories are not parties to the pending federal litigation and never consented to the jurisdiction of the magistrate judge, at least one party filed a Declination to Proceed Before a Magistrate Judge, reassigning the case to this Court. *See* Declin., ECF No. 36.

## III.    ARGUMENT

### A.    There Is No Basis for Personal Jurisdiction over Mr. Dobson Because He Did Not Consent to Jurisdiction and Has No Contacts with California.

There is no basis for personal jurisdiction over Mr. Dobson in California. Mr. Dobson does not live in California, does not conduct business in California, and did not sign the Morfit Agreement in his individual capacity. Under California's long-arm statute, personal jurisdiction is unable to be exerted over Mr. Dobson in these circumstances.

As an initial matter, Indyzen bears the burden of demonstrating facts justifying the exercise of personal jurisdiction over Mr. Dobson such that compelling him to arbitration is proper. *Pavlovich v. Super. Ct.*, 58 P.3d 2, 6-7 (Cal. 2002). Indyzen has not met its burden.

### 1.    This Court Does Not Have General Jurisdiction over Mr. Dobson.

A court may find general personal jurisdiction where a defendant's "affiliations with the state are so 'continuous and systematic' as to render them essentially at home in the forum State." *Pestmaster Franchise Network, Inc. v. Mata*, No. 16-cv-7268-EMC, 2017 WL 1956927, at *2 (N.D. Cal. May 11, 2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile. *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014).

It is undisputed that Mr. Dobson is not domiciled in California; he is a resident of, and domiciled in, Vietnam. Moreover, Mr. Dobson does not have "continuous and systematic" contacts with California. He has no bank accounts or real property in California and does not conduct business

1

2

in or target or direct any of his activities towards the state. Thus, there is no basis for the exertion of general jurisdiction over Mr. Dobson.

Indyzen argues that this Court has general jurisdiction over Mr. Dobson because he "worked extensively with Narra while he was in California on the development of the Morfit App" Pet. for Order Compelling Arb. at 3, ECF No. 32-1. Indyzen has not substantiated this conclusory allegation, but even assuming, *arguendo*, its veracity, this limited contact—all of which was done by Mr. Dobson in his official capacity as an agent of Parkridge—would be wholly insufficient to render Mr. Dobson "essentially at home" in California. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 781 (7th Cir. 2003) ("[C]ontracting with an out-of-state party alone cannot establish automatically sufficient minimum contacts in the other party's home forum."). Mr. Dobson had contact with Narra as a result of his position at and work for Parkridge—a Hong Kong company. The fact that Mr. Dobson may have occasionally contacted Narra by email regarding Parkridge business while Narra was physically located in California is merely fortuitous contact with the state, as such, it is insufficient to support a finding of general jurisdiction against Mr. Dobson.

### 2.   Specific Jurisdiction Does Not Exist over Mr. Dobson.

The Ninth Circuit has established a three-prong test for analyzing specific jurisdiction:

(1) The non-resident defendant must purposefully direct activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice.

*Adobe Sys. Inc. v. Trinity Software Distrib., Inc.*, No. C. 12-1614 SI, 2012 WL 3763643, at *5 (N.D. Cal. Aug. 29, 2012) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). The plaintiff bears the burden of establishing the first two prongs; if satisfied, the burden

shifts to the defendant to "'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

As previously established, Mr. Dobson is domiciled in Vietnam and does not conduct business in California. Mr. Dobson's activities in his individual capacity are entirely unrelated to the allegations giving rise to the contractual dispute between Parkridge and Indyzen. Mr. Dobson signed the Morfit Agreement only in his official capacity, the contract does not affect his individual rights and does not contain any explicit or implicit reference to Mr. Dobson individually. Indyzen further fails to allege that Mr. Dobson had any role in contract negotiations or in any activities related to development of the Morfit App aside from in his official capacity as an agent of Parkridge.

Moreover, Indyzen's allegations that Mr. Dobson—as an agent of Parkridge—worked extensively with Narra while he was in California on the development of the Morfit app, are entirely insufficient to confer jurisdiction over him personally. *Mihlon v. Super. Ct.*, 215 Cal. Rptr. 442, 447 (Cal. Ct. App. 1985) ("[I]t is well established by California case law that for jurisdictional purposes the acts of corporate officers and directors, in their official capacities, are acts exclusively of (*qua* ) the corporation, and are thus not material for purposes of establishing minimum contacts as to individuals."). The allegations against Mr. Dobson arise from his actions in his official capacity as an agent of Parkridge, all of which are actions of the company. Further as stated previously, Mr. Dobson's emails to Narra while Narra allegedly was physically located in California do not amount to purposeful availment by Mr. Dobson to the benefits and protection of California laws. Narra was an employee of Parkridge—a Hong Kong company—and Mr. Dobson's contacts with Narra were due to and in furtherance of Parkridge's business. That Narra was allegedly fortuitously located in California during some of these dealings is entirely immaterial for this Court's purposes. Because Indyzen has failed to plead *any* connection between California and Mr. Dobson in his individual capacity, specific jurisdiction does not exist over Mr. Dobson.

**B.    The Petition Should Be Dismissed for Improper Venue.**

Under 9 U.S.C. § 4, venue is proper on a petition to compel arbitration in "any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties." 9 U.S.C. § 4; *also* 28 U.S.C. § 1391 (providing standard for venue). Because this Court lacks personal jurisdiction over Mr. Dobson for the reasons stated above, venue in the Northern District of California is also improper.

**C.    Indyzen's Allegations to Compel Mr. Dobson to Arbitration Do Not Meet Pleadings Standards.**

Indyzen's petition has not met basic pleadings standards required under the Federal Rules of Civil Procedure and therefore should be dismissed. Fundamentally, Indyzen neither puts this Court nor Mr. Dobson on notice of exactly what claims are to be decided against Mr. Dobson in arbitration. Indyzen chose not to file a complaint or counterclaim against Mr. Dobson and instead petitioned this Court to compel arbitration under the FAA without specifying its asserted allegations. A petition to compel arbitration must still meet basic pleading standards under the Federal Rules of Civil Procedure, however. *See Frank Gari*, 2012 WL 12895672, at *4 ("Plaintiffs set forth no factual allegations in the Petition to support their conclusory statement that they have claims against [Defendant]. While Plaintiffs need not articulate their claims against Defendant in as detailed a fashion as they would in a complaint, they must provide sufficient factual allegations about their purported claims for us to determine whether the claims fall within the scope of the arbitration clause."); *Fund Raising, Inc. v. Alaskans for Clean Water, Inc.*, No. CV 09-4106 AHM (VBKx), 2009 WL 3672518, at *4 (C.D. Cal. Oct. 29, 2009) (concluding Petitioner failed to allege "sufficient non-conclusory facts that would enable it to establish alter ego").

Neither the allegations raised in the Petition against Mr. Dobson nor in the arbitration meet basic pleadings standards for purposes of deciding Indyzen's Petition. First, the breach of contract counterclaim fails to allege facts to give sufficient notice about how the Morfit Agreement was

conceivably breached by Mr. Dobson. *See Levy v. State Farm Mut. Auto. Ins.*, 58 Cal. Rptr. 3d 54, 57 (Cal. Ct. App. 2007) ("Facts alleging a breach, like all essential elements of a breach of contract cause of action, must be pleaded with specificity."). No such alleged breaches of the Morfit Agreement were pled by Indyzen against Mr. Dobson.

The arbitration counterclaims also allude to a vague "misappropriation of intellectual property" claim against Mr. Dobson. It is impossible to discern whether Indyzen is raising a patent infringement, trade secret misappropriation, copyright infringement, or any other claim related to intellectual property. Regardless of Indyzen's past and future characterizations, the claim falls well short of pleadings requirements. Notably, Indyzen fails to identify the intellectual property, the scope of Indyzen's alleged rights to the intellectual property, how its rights were somehow misappropriated, who specifically wrongfully used the intellectual property, and the circumstances of any alleged wrongful use. *See Peralta v. Cal. Franchise Tax Bd.*, 124 F. Supp. 3d 1000 (N.D. Cal. 2015) (dismissing individuals because plaintiff had "not alleged a sufficient nexus between them and the alleged infringement"); *Wistron Corp. v. Phillip M. Adams & Assocs., LLC*, 10-cv-4458 EMC, 2011 WL 4079231, at *4 (N.D. Cal. Sept. 12, 2011) (generic descriptions of accused product, *i.e.*, "computer chips, motherboards, computers" were insufficient to state infringement claim). Indyzen further fails to provide this Court with a proper basis for ascertaining whether such a claim falls within the Morfit Agreement's arbitration clause.

**D.      The Petition Fails Because Mr. Dobson Was Not a Party to the Morfit Agreement and Never Agreed to Arbitration.**

Indyzen's Petition ignores a fundamental legal principle: a party cannot compel another party to arbitration where those entities never signed an agreement with an arbitration clause. *See Marsch v. Williams*, 28 Cal. Rptr. 2d 398, 400 (Cal. Ct. App. 1994) ("[A] party can be compelled to submit a dispute to arbitration only where he has agreed in writing to do so.").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 1.   Indyzen Erroneously Claims There Is a Presumption in Favor of Compelling Non-signatories to Arbitration.

As an initial matter, Indyzen incorrectly argues that there is a presumption in favor of arbitration regarding Mr. Dobson. *See* Mem. in Supp. of Pet. at 4, ECF No. 32-2 (Indyzen claiming that the "burden of proof" is on the parties "resisting arbitration"). To the contrary, the "general principle [is] that only those who have agreed to arbitrate are obliged to do so." *Mundi*, 555 F.3d at 1046; *Grey v. Am. Mgmt. Servs.*, 139 Cal. Rptr. 3d 210, 214 (Cal. Ct. App. 2012) ("[F]undamentally, a party is not obligated to arbitrate unless he or she has expressly agreed to do so by entering into a valid and enforceable written contract with the party who seeks arbitration.").

### 2.   Mr. Dobson Cannot Be Compelled to Arbitrate Because He Is Not Personally a Signatory to the Morfit Agreement or any Agreement to Arbitrate with Indyzen.

Mr. Dobson did not sign the Morfit Agreement in his individual capacity, did not agreed to arbitrate any disputes with Indyzen, and is not a party to the Agreement. *See* Compl., Ex. B, ECF No. 1-2; *see also AT&T Techs.*, 475 U.S. at 649 ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."). Rather, the software development agreement to develop the Morfit App was between two parties: Indyzen, Inc. and Parkridge Ltd. Zero language in the Morfit Agreement explicitly or implicitly refers to Mr. Dobson individually. Indeed, Indyzen has not identified any contract between Indyzen and Mr. Dobson individually, let alone one with an arbitration clause. Moreover, Mr. Dobson has never conducted business with Indyzen, outside of his actions in his capacity as Parkridge's agent. These facts are dispositive. Because Mr. Dobson did not personally agree to arbitrate the claims and counterclaims with Indyzen, he cannot be required to arbitrate them.

### 3.   The Morfit Agreement's Arbitration Clause Is Narrow and Only Applies to Disputes "Between" Parkridge and Indyzen, Not Non-signatories.

The Morfit Agreement has a very narrow arbitration clause that by its terms does not apply to Mr. Dobson. The arbitration clause is expressly limited to "any dispute or disagreement ***between*** the Company and the Customer…." *See* Compl., Ex. B, ECF No. 1-2 (emphasis added). Under the Morfit

Agreement, "Company" is defined as "Indyzen[ ]Inc.," and "Customer" is defined as "Parkridge Limited." *Id.* The arbitration clause contains no broad language to show any intent to arbitrate matters other than disputes between the defined parties. *See Fresno Motors, LLC v. Mercedes-Benz USA, LLC*, No. 1:10CV012 AWI DLB, 2010 WL 1136192, at *4 (E.D. Cal. Mar. 22, 2010) ("The public policy favoring arbitration does not apply to disputes the parties have not agreed to arbitrate.").

In *Mundi*, the Ninth Circuit addressed a very similar arbitration clause to the one at issue here that was also limited to disputes "between" defined parties. 555 F.3d at 1047. The Ninth Circuit rejected the argument that a non-signatory should be compelled to arbitration because the arbitration agreement at issue was "premised on a disagreement ***between*** Wells Fargo and the borrower." *Id.* at 1045, 1047 (emphasis added) ("[A]ny disagreement between the borrower and a third party...is simply not within the scope of the arbitration agreement, even if it is related in some attenuated way to the" subject of the agreement.). The Morfit Agreement's arbitration clause contains the **same** qualifying language as in *Mundi*, limiting arbitration disputes "between" defined parties: Indyzen and Parkridge.

Despite the Morfit Agreement's explicit language and clear intentions, Indyzen argues this Court should force Mr. Dobson into arbitration based upon vague theories of alter ego, agency, equitable estoppel, or third party beneficiary status.[4] While on rare occasions courts have applied these principles to require a non-signatory to participate in arbitration, these exceptions do not apply here, and any notions of fairness and equity further prevent Mr. Dobson from being forced into an arbitration that he did not agree to.

_____

[4]   Indeed, the Petition was only filed by Indyzen, ostensibly because Narra was not, himself, a signatory to the Morfit Agreement, so Narra would not have authority under the Morfit Agreement to compel arbitration against any entity.

1

2

### 4.      Arbitration Cannot Be Compelled Against Mr. Dobson Under an Alter Ego Theory.

Indyzen first argues that Mr. Dobson should be compelled into arbitration, alleging he is the

3      alter ego of Parkridge and the remaining Non-signatories. Indyzen seeks an order from this Court

4      disregarding the corporate structures of Parkridge and the Non-signatory entities, and binding them

5      all to Parkridge's contractual obligations based on nothing more than allegations that all entities

6      related to Mr. Dobson are "one and the same." This argument is meritless.

7          A corporation is a legal entity with its own distinct liabilities and obligations that is separate

8      and distinct from its stockholders, officers and directors. *See Sonora Diamond Corp. v. Super. Ct.*, 99

9      Cal. Rptr. 2d 824, 836 (Cal. Ct. App. 2000). Under California law, for a court to disregard a corporate

10     identity, a plaintiff must establish: (1) such a unity of interest and ownership exists that the

11     personalities of the corporation and individual are no longer separate, and (2) an inequitable result

12     will follow if the acts are treated as those of the corporation alone. *See Sandoval v. Ali*, 34 F. Supp. 3d

13     1031, 1040 (N.D. Cal. 2014). A plaintiff must establish both of these elements by facts supporting

14     each. *See Nielson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1115 (C.D. Cal. 2003);

15     *Sandoval*, 34 F. Supp. 3d at 1040 (finding that plaintiff's alter ego allegations were "too conclusory to

16     survive a motion to dismiss").

17         Indyzen does not sufficiently allege unity of interest or fraud. The crux of Indyzen's argument

18     is that Mr. Dobson has ownership and control over the Non-signatory entities and Parkridge, and

19     therefore the companies should be treated as a single entity. "Common ownership alone," however,

20     "is insufficient to disregard the corporate form." *Sandoval*, 34 F. Supp. 3d at 1040 (dismissing alter

21     ego claims because common ownership is insufficient to treat two separate entities as the same

22     entity); *see also Riddle v. Leuschner*, 335 P.2d 107, 109-10 (Cal. 1959) (rejecting alter ego claim

23     based upon the same person having roles or positions in different companies). Mr. Dobson is a

24     successful businessman who, like many successful business people, is involved in many different

25     companies. This is not unusual, nor is it unlawful. That Mr. Dobson occasionally sends an email from

26

27

28

the wrong account is not evidence of malfeasance; it is an unsurprising mix-up for a busy person given the state of technology in this day and age.

The Petition also labels the Non-signatory entities as "sham companies," "one and the same," and corporate "fronts."[5] Mem. in Supp. of Pet. at 6, ECF No. 32-2. Indyzen's recitation of these unsupported adjectives does not establish the existence of an alter ego relationship between Mr. Dobson, Parkridge and the other Non-signatories, as no facts are provided to show Mr. Dobson disregarded corporate formalities or operated either Parkridge or CFYC as a fraud—allegations that are required to be pled with particularity under F.R.C.P. 9(b) and were not. *See Sandoval*, 34 F. Supp. 3d at 1040 (imposing a heightened pleading standard and noting that a party "must allege specifically both of the elements of alter ego liability, as well as facts supporting each").

Furthermore, Indyzen has not shown (or even alleged) that Mr. Dobson commingled his funds with any of the Non-signatories or Parkridge—another relevant factor for establishing alter ego liability. *See Nielson*, 290 F. Supp. 2d at 1115 (party must allege facts supporting each element of alter ego relationship). Indeed, such allegations could not, in good faith, be made against Mr. Dobson; the evidence shows that he has separate bank accounts, and that the companies he is in charge of are adequately funded, independently owned and managed, maintain corporate records, and are located in different places. *See* Aff. of Mr. Dobson, Ex. C. The remaining allegations relating to R & R Fitness Holdings are irrelevant; Indyzen has failed to explain how this accusation against a non-party bears any connection to the existence of an alter ego relationship between Mr. Dobson and the Non-signatories or Parkridge. Indyzen therefore has not provided any basis to compel arbitration based upon the alter ego doctrine.

---

[5]  Mr. Dobson takes exception to the characterizations used by Indyzen; they are defamatory, untrue, and unsupported in fact.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**5.      Indyzen's Narrow Equitable Estoppel Argument Should Be Rejected Because Mr. Dobson Did Not Exploit the Morfit Agreement.**

To bind a non-signatory to an arbitration clause under an equitable estoppel theory, a party must demonstrate the non-signatory "knowingly exploit[ed] the agreement containing the arbitration clause despite having never signed the agreement." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006). Furthermore, the Ninth Circuit construes the equitable estoppel exception narrowly in the context of a signatory seeking to compel a non-signatory into arbitration. *See Mundi*, 555 F.3d at 1046 (labeling the equitable estoppel exception as within "very narrow confines" in light of the "general principle that only those who have agreed to arbitrate are obliged to do so").

Applying the Ninth Circuit's *Comer* test, Indyzen's allegation of equitable estoppel fails because it has not shown that Mr. Dobson knowingly exploited the Morfit Agreement. Mr. Dobson is only connected to the contractual dispute between Parkridge and Indyzen by virtue of his agency relationship with Parkridge. The Morfit Agreement neither refers to Mr. Dobson individually nor expressly or impliedly confers any contractual rights or obligations upon him. The Petition notable omits any allegations that Mr. Dobson individually received any revenue, product code, or anything else of value from Indyzen, important factors under an equitable estoppel analysis.

Indyzen's claim of equitable estoppel further fails because the allegations that Mr. Dobson misappropriated Indyzen's intellectual property do not meet the *Twombly* or *Iqbal* standards, and nevertheless fall outside of the arbitration clause. *See* Mem. in Supp. of Pet. at 10, ECF No. 32-2; *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). As stated above, Indyzen's "misappropriation" claim fails basic pleadings standards and is factually underdeveloped. But even if properly alleged, such a tort claim is not the proper subject of arbitration when the Morfit Agreement's arbitration clause expressly is limited to claims between Parkridge and Indyzen. *See Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 924 (9th Cir. 2011) (holding that tort claim was not arbitrable under the parties' arbitration clause); *Tracer Research Corp. v. Nat'l*

*Env. Servs. Co.,* 42 F.3d 1292, 1295 (9th Cir. 1994) (finding that misappropriation claim was not a proper subject for arbitration where the arbitration clause was narrow).

Indyzen cites to an unpublished opinion, *Exigen Properties, Inc. v. Genesys Telecommunications Laboratories, Inc.*, in support of its position, but it is distinguishable. No. A140081, 2016 WL 520283 (Cal. Ct. App. Feb. 9, 2016). First, the arbitration clause at issue in *Exigen* had significantly different scope than present here, and applied to "any" disputes "arising out of or in connection with" the contract, which is substantially broader than the Morfit Agreement's arbitration clause. *Id.* at *1-2. Furthermore, the non-signatory in *Exigen* received direct benefits from the contract in the form of marketing, pricing discounts, promotion, and maintenance of shared confidential information. *Id.* at *9. In contrast, Indyzen has not shown that Mr. Dobson personally received anything from Indyzen.

Indyzen also claims that Mr. Dobson is "inextricably intertwined" with Parkridge without providing any facts or case law in support of this argument. Indyzen accordingly cannot establish an equitable estoppel basis to compel Mr. Dobson into arbitration, as he did not knowingly exploit the Morfit Agreement, and the allegations are insufficiently pled and would nevertheless fall outside of the arbitration clause if true.

**6.    Mr. Dobson's Status As An Agent of Parkridge Is Not A Sufficient Basis On Which To Compel Him To Participate In Arbitration.**

Mr. Dobson is not a party to the Agreement.  He signed the Agreement not as an individual, but in his official capacity as a corporate officer of Parkridge, writing "C.E.O.":

1
2
3
4
5

Compl., Ex. B, ECF No. 1-2. Under California law, signing an arbitration agreement as an agent for a disclosed principal does not bind the agent to arbitrate claims brought against him personally. *Benasra*, 112 Cal. Rptr. 2d at 361-62 (Cal. Ct. App. 2001) (stating agent was "not the one who wants to be bound by the arbitration provision in a contract that he signed only in a representative capacity").

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

The cases Indyzen cites to the contrary are distinguishable and inapposite.  For example, in *Harris v. Superior Court*, 233 Cal Rptr. 186 (Cal. Ct. App. 1986), the court allowed a non-signatory to require arbitration ***against a signatory party*** of the arbitration agreement. *See also Thomas v. Westlake*, 139 Cal. Rptr. 3d 114, 121 (Cal. Ct. App. 2012) ("[A]gents of parties to the agreements containing arbitration clauses . . . are also entitled to compel arbitration of [Plaintiff's] claims against them."). But whether an agent in his *official* capacity may *enforce* an arbitration agreement is a separate issue from whether an agent may be *compelled* to arbitrate a dispute brought against him in his *individual* capacity. *Cf. Benasra*, 112 Cal. Rptr. 2d at 361 ("It is one thing to permit a nonsignatory to relinquish his right to a jury trial, but quite another to compel him to do so.").  The fact that an agent of a signatory to a contract "may in some circumstances be viewed ... as an agent who is entitled to *compel* arbitration is legally irrelevant where, as here, [he] *is not the one who wants to be bound by the arbitration provision in a contract that he signed only in a representative capacity*." *Id.* (emphasis in original).

21
22
23
24
25
26
27
28

*Harris* is also distinguishable because the agent there was expressly covered by the terms of the arbitration agreement.  *Harris*, 233 Ca. Rptr. at 187-89.  Thus, contrary to Respondents' submission, *Harris* in no way supports the proposition that a signatory who executes a contract containing an arbitration provision solely in a representative capacity is bound by that provision in his individual capacity.  *Id.* Indyzen's agency argument should be rejected, as Mr. Dobson did not sign the Morfit Agreement in his individual capacity, and cannot be bound to arbitrate claims brought against him personally under California law.

7.     **Mr. Dobson Is Not a Third Party Beneficiary of the Morfit Agreement.**

In order to determine whether a contract was made for the benefit of a third person, a court must look at whether the parties' intent to benefit a third person appears from the terms of the contract. *Spinks v. Equity Res. Briarwood Apts*, 90 Cal. Rptr. 3d 453, 468-69 (Cal. Ct. App. 2009)). Here, Mr. Dobson is not named in the Morfit Agreement, nor is there clear intent in the terms of the Morfit Agreement to benefit Mr. Dobson. Rather, the contract was to benefit Parkridge by Indyzen developing a mobile app for it, and not for Mr. Dobson. Thus, Mr. Dobson is not a third party beneficiary of the Morfit Agreement.

E.     **The Arbitrator Does Not Have the Authority to Decide Whether Non-Parties to an Arbitration Agreement Are Within Its Jurisdiction.**

Indyzen's request for the Court Order to empower the Arbitrator "to decide whether additional parties can be added to the arbitration in the future" without court review is patently contrary to basic principles of contract, arbitration and due process. *See* Indyzen's Mem. in Supp. of Pet. at 13, ECF No. 32-2. Arbitration is a "matter of contract," and "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960); see also *Grey*, 139 Cal. Rptr. 3d at 212-15. Disputes about whether a party is bound by a given arbitration clause "raises a 'question of arbitrability' for a court to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). A court "should not assume that the parties agreed to arbitrate arbitratibility unless there is clear and unmistakable evidence that they did so." *Cape Flattery*, 647 F.3d at 920 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Because any currently unidentified additional companies have clearly not signed the Morfit Agreement, zero evidence supports Indyzen's request to provide the Arbitrator with boundless authority to decide which parties are within its jurisdiction.

1

DATED:  January 18, 2018

Respectfully submitted,

2

3

By:  __/s/ Adam Wolek_____
Adam Wolek (*pro hac vice*)
Taft Stettinius & Hollister LLP
111 E. Wacker Drive, Suite 2800
Chicago, Illinois 60601
Tel: 312.836.4063
Fax: 312.966.8598
awolek@taftlaw.com

4

5

6

7

DAVID A. MAKMAN (SBN 178195)
david@makmanlaw.com
LAW OFFICES OF DAVID A. MAKMAN
655 Mariner's Island Blvd, Suite 306
San Mateo, CA 94404
Telephone: (650) 242-1560
Facsimile: (408) 716-3052

8

9

10

11

12

*Attorneys Appearing in a Limited Capacity for*
*Counter-Defendants Boon Global Limited, F8*
*Vietnam Company Limited, California Fitness*
*& Yoga Centers, California Management*
*Group, and Randy Dobson*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mr. Dobson's Mot. to Dismiss                    **- 16 -**                    No. 16-cv-07387

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on January 18, 2018, he caused this document to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.

DATED: January 18, 2018                    Taft Stettinius & Hollister LLP


By:   /s/ Adam Wolek