# EXHIBIT B

INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION

| | |
|---|---|
| In the Matter of the Arbitration Between )<br>)<br>PARKRIDGE LIMITED and MABEL MAK, )<br>)<br>    Claimants, )<br>)<br>    and )<br>)<br>)<br>)<br>INDYZEN, INC. and PRAVEEN NARRA KUMAR, )<br>)<br>    Respondents. )<br>———————————————————————— )<br>)<br>INDYZEN, INC. and PRAVEEN NARRA KUMAR, )<br>)<br>    Cross-Claimants, )<br>)<br>    and )<br>)<br>)<br>PARKRIDGE LIMITED, BOON GLOBAL )<br>LIMITED, F8 VIETNAM COMPANY LIMITED, )<br>CALIFORNIA FITNESS & YOGA CENTERS, )<br>CALIFORNIA MANAGEMENT GROUP and )<br>RANDY DOBSON, )<br>)<br>    Cross-Respondents. )<br>———————————————————————— ) | ICDR Case No. 01-17-0003-4918<br><br>PROCEDURAL ORDER NO. 2<br>(Jurisdiction and Preliminary Issues) |

This Order addresses various jurisdictional, pleading and preliminary issues raised by the parties at the start of this arbitration.

## BACKGROUND

The case was initiated as a U.S. District Court proceeding in the Northern District of California (Case No: 4:16-cv-07387-KAW). The litigation has been stayed by the Court pending disposition in this matter.

1

Procedural Order No. 2 – ICDR: Parkridge et al. - Indyzen et al. (11.06.17)

In the court proceeding, Claimant/Cross-Respondent Parkridge Limited ("Parkridge") and Claimant Mabel Mak ("Mak") brought claims against Respondents/Cross-Claimants Indyzen, Inc. ("Indyzen") and Praveen Narra Kumar ("Kumar").  No cross-claim was filed in that proceeding. Rather, Respondents brought motions to compel arbitration and stay the litigation pursuant to the arbitration agreement contained in the Software Development and License Agreement dated January 5, 2015 (the "Morfit Agreement") between Parkridge and Indyzen. The Court stayed the action on the basis of the arbitration agreement and Claimants proceeded with this arbitration by submitting an arbitration Demand that tracked the Complaint in the court proceeding.

In response to the arbitration Demand, and prior to the appointment of the Arbitrator, Respondents submitted an Answer generally denying the claims and submitted a Crossclaim (denominated "Counterclaim") against Parkridge, its principal Cross-Respondent Randy Dobson ("Dobson") and various entities alleged to be acting in concert with them, specifically, Cross-Respondents Boon Global Limited ("Boon"), F8 Vietnam Company Limited ("F8"), California Fitness & Yoga Centers (CF&YC) and California Management Group ("CMG") (the latter five Cross-Respondents, collectively the "Additional Cross-Respondents").

Prior to the Preliminary Hearing, Claimants submitted motion papers objecting to arbitral jurisdiction over the additional Cross-Respondents and moving to strike claims in the Crossclaim. The Additional Cross-Respondents specially appeared through Claimants' counsel at the Preliminary Hearing to contest jurisdiction.

At the Preliminary Hearing, the Arbitrator, in consultation with counsel, set a briefing schedule on the issues. The parties have fully briefed the jurisdictional issues and various pleading issues, and raised additional issues in the course of doing so, and were allowed additional briefing

2

Procedural Order No. 2 – ICDR: Parkridge et al. - Indyzen et al. (11.06.17)

to address the additional issues raised. This Order disposes of all such issues so that this arbitration can proceed with scheduling, disclosures and the evidentiary hearing.

It is agreed by the parties that arbitral jurisdiction is proper as between Claimant Parkridge and Respondent Indyzen. Claimants maintain their objection raised in the District Court proceeding that Respondent Praveen Narra Kumar ("Narra") is not a party to the arbitration agreement and their claims against (and, now, the claims by) Narra are not subject to arbitration. All Cross-Respondents contest the existence of an arbitration agreement as to the Additional Cross-Respondents and the scope of the arbitration agreement as to the cross-claims against them. Although claims are denied, no contest is made by the parties as to the jurisdictional standing of Claimant Mak.

The arbitration provision in the Morfit Agreement, paragraph 11, provides in pertinent part that "Except for any claim arising out of payments due to the Company, any dispute or disagreement arising between the Company and the Customer which is not resolved…shall be referred to arbitration" in San Jose, California under the AAA Commercial Arbitration Rules.

COURT ORDER

In its Order Granting Defendants' Motion to Stay Case and Compel Arbitration dated April 18, 2017, the District Court determined that a valid agreement to arbitrate exists as between Parkridge and Inyzen and the agreement encompassed the dispute at issue under the Complaint. Specifically, the Court determined the language "any dispute or disagreement arising between the Company and the Customer" in the Morfit Agreement should be broadly interpreted and likely applies to all disputes in the Complaint filed by Parkridge against Indyzen. The Court noted that the only carve out is to "any dispute arising out of payments due to [Indyzen]." The Court determined that Claimant Mak is equitably estopped and bound by the arbitration provisions with

3

respect to the claims based on her status as the majority shareholder of Parkridge based on agency principles. Further, the Court determined that Respondent Narra is bound by the arbitration agreement with respect to the claims in the Complaint as an officer and agent of Claimant Parkridge and as an officer of Respondent Indyzen. Accordingly, the Court determined that no claims by Claimants and against Respondents are clearly excluded from arbitration and the issue of arbitrability of the claims is delegated to the Arbitrator pursuant to the Morfit Agreement.

PLEADINGS AND JURISDICTIONAL ISSUES

Demand

It is alleged in the arbitration Demand that Claimant Parkridge is a Hong Kong company, Claimant Mak is a Hong Kong resident, Respondent Indyzen is a California corporation and Respondent Narra is a US resident.

It is alleged that, in 2013, Dobson and Narra entered into discussions regarding a software development project, specifically a mobile application combining health and fitness information with social media networking. The Demand alleges that Tibco was first hired to do the project and after Tibco failed to perform properly, Narra recommended his own company, Indyzen, to develop the application.

The Demand alleges Parkridge was formed in 2013 and, in January 2015, a Shareholder Agreement was signed providing Mak 70% of the shares and Narra's father, Parasurama Naidu Narra, 30% of the shares. The Shareholder Agreement provides that Narra, the son, would provide software development services, would serve as CTO of Parkridge and would have Indyzen do the development work at a discount. Three directors were appointed including Dobson and Narra.

4

The Morfit Agreement between Parkridge and Indyzen, an agreement for Indyzen to provide software development services to Parkridge, was signed effective January 5, 2015.[1]

Claimants contend that Narra, as a director and officer of Parkridge, failed to fulfill his obligations to Parkridge and breached fiduciary duties by utilizing Indyzen to develop the application to the detriment of Parkridge. Claimants contend that Narra misrepresented and concealed facts regarding Indyzen and that Indyzen charged an exorbitant price, delivered defective product and has wrongfully withheld documents relating to the development.

Claimants allege that Respondents' conduct gives rise to claims for breaches of fiduciary duty under California and Hong Kong law, aiding and abetting such breach of fiduciary duty under California law, and fraudulent misrepresentations and fraudulent concealment under California law. Claimants seek damages, injunctive relief and other relief.

Respondents generally deny the allegations in the Demand and asserted affirmative defenses.[2]

In their "Renewed Objection to this Tribunal's Jurisdiction," Claimants argue that Respondent Narra is not properly a party in arbitration as ordered by the Court because he did not sign the arbitration agreement and the claims are outside the scope of the agreement. In particular, they contend a significant portion of the alleged wrongdoing predates the Morfit Agreement and the claims are viable separate from it. Respondents contend this is an attempt to re-litigate issues previously resolved by the Court and Claimants arguments are incorrect for the reasons determined by the Court.

---

[1] The record is not clear as to whether Narra became the CTO in 2013 at the time of the formation of Parkridge or in 2015 at the time the Shareholder Agreement and Morfit Agreement were signed.

[2] Claimants moved to strike Respondents' numerous affirmative defenses. By agreement among the parties and order of the Arbitrator, that matter was to be addressed through the filing of an Amended Answer and is not currently at issue.

5

Counts One (Breach of Fiduciary Duty – Cal Law), Three (Breach of Fiduciary Duty – HK Law), Six (Fraudulent Misrepresentation) and Seven (Concealment) in the Demand appear to be against Respondent Narra and, accordingly, based on the current positions of the parties, are subject to review as to arbitrability. Counts Two (Aid and Abetting Breach) and Four (Breach of Contract/Good Faith) and Five (Unjut Enrichment) appear to be against Respondent Indyzen; the claims are denied by Indyzen but the parties do not seek jurisdictional review as to those claims.

Cross-claim

Respondents/Cross-Claimants Indyzen and Narra submitted a Cross-claim against Parkridge and the Additional Cross-Respondents with respect to breach of contract and alleged IP misappropriation. Indyzen and Narra allege that Dobson and Narra entered into negotiations regarding a project in 2013, that Dobson owns and operates Cross-Respondents CFYC and CMG, that Dobson and Narra set up Boon as a crowd funding company, that the Morfit Agreement was entered in early 2015, that Indyzen performed and that Parkridge failed to make proper payments. Further Cross-Claimants allege that Cross-Respondents have misappropriated IP developed by Indyzen and have launched an unauthorized clone. Cross-Claimants allege that Dobson commingled assets and resources and that the Cross-Respondents do not have a separate unity of interest and have conspired and collaborated with each other to commit the wrongs. Accordingly, Cross-Respondents seek compensatory and punitive damages, declaratory relief and other relief.

The Arbitrator asked counsel specially appearing for the Additional Cross-Respondents to provide a list of the proper legal names and citizenship of the Additional Cross-Respondents. Cross-Respondents' counsel identified Boon as a Hong Kong company, F8 and CF&Y as Vietnamese companies and Dobson as a US citizen. Cross-Respondents' counsel further indicated that CMG is not a legal entity; rather it is "a general name used in Vietnam, referring to a range of

6

brands and portfolio operating alongside CF&YC gym centers." As Cross-Claimants have not had a full opportunity to properly present evidence on the legal existence of CMG and have not dismissed it as a party (and offer evidence that it is a legal entity and not merely a fictitious business name), the Arbitrator proceeds for now on the basis that it is a named party in the arbitration.

Cross-Claimants contend that the non-signatory Additional Cross-Respondents are related to Cross-Respondent Parkview or its principals and otherwise subject to arbitration pursuant to various non-signatory extension theories. Cross-Respondents contend that (1) the additional Cross-Respondents and the cross-claims against all Cross-Respondents are not subject to the arbitration clause, (2) jurisdiction over non-signatories is a matter solely for the courts, (3) the cross-claims are not pled with sufficient specificity and (4) the misappropriation claim is not actionable under California law.

APPLICABLE LAW

The parties have agreed to the applicable law with respect to the arbitration. As discussed with the parties at the Preliminary Hearing and, as set out in Procedural Order No. 1., as to substantive law, pursuant to paragraph 10 of the Morfit Agreement, California law governs interpretation of the Morfit Agreement. Various claims are asserted under the law(s) of California and Hong Kong, and involve actions by parties in other jurisdictions. As to procedural law, this is an international arbitration seated in California and the parties have agreed it is governed, accordingly, by the Federal Arbitration Act and California's international arbitration statute. In accordance with paragraph 11 of the Morfit Agreement, the parties agree that the arbitration is to be conducted pursuant to the AAA Commercial Arbitration Rules.

Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit. AT&T Technologies, Inc. v. Communications

7

Workers of America, 475 US 643, 648 (1986). Questions as to whether a party is bound to arbitrate a dispute are gateway questions. Whether a party is bound to arbitrate raises a "question of arbitrability" for a court, not the arbitrator to decide. First Options of Chicago, Inc. v. Kaplan, 514 US 938, 943-946 (1995). An arbitrator has no power to determine the rights and obligations of a person who is not a party to the arbitration agreement.

A non-signatory may be bound to an arbitration agreement under various extension theories such as agency, estoppel or alter-ego. See Comer v. Micor, Inc., 436, F.3d 1098 (9th Cir. 2006). The court must determine the status of a non-signatory to the arbitration agreement. Kramer v. Toyota, 705 F. 3d 1122 (9th Cir. 2013); see also, American Builders Association v. Au-Yang, 226 Cal App 3d 170, 179 (1990). Accordingly, unless the parties, including the non-signatories, expressly submit the matter to arbitration, this is a question for the court.

Where a non-signatory seeks to enforce an arbitration agreement, the doctrine of equitable estoppel applies when the signatory must rely on the term of the agreement in asserting the claims against the non-signatory or the claims are intimately founded in and intertwined with the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the non-signatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement. Kramer, 705 F. 3d at 1129.

Likewise, the question as to whether an arbitration agreement in a concededly binding contract applies to a particular type of controversy is for the court, not the arbitrator, to decide. First Options of Chicago, Inc. v. Kaplan, 514 US 938, 944 (1995); See Howsam v. Dean Witter Reynolds, Inc., 537 US 79, 84 (2002); Dream Theater, Inc. v. Dream Theater, 124 Cal App. 4th 547, 553 (2004).

8

Courts must defer questions of arbitrability to the arbitrator where the parties have "clearly and unmistakably" agreed that the arbitrator decide those issues. Howsam, 537 US at 84; Brennan v. Opus Bank (9th Cir 2015) (incorporation of the AAA rules containing a delegation provision into the employment agreement constituted a clear and unmistakable intent to delegate questions of arbitrability); see also, Nutraceuticals, LLC v. Cyanotech Corp, 769 F. 3d 1308 (11th Cir. 2014).

In deciding whether the parties agreed to arbitrate a particular dispute, the courts apply ordinary state law contract principles governing contract formation. First Options, 514 U.S. at 938; Granite Rock Co. v. International Br. of Teamsters, 561 US 287, 287, 196 (2010). This necessarily requires the court to examine, and to a limited extent, construe the underlying agreement. See Freeman v. State Farm Mutual, 14 Cal 3d 473, 480 (1975).

The analysis as to scope begins with the specific wording of the arbitration clause and whether it is broad or narrow, and if the clause is narrow whether the dispute involves an agreement collateral to the agreement. Prudential Lines Inc. v. Exxon Corp, 704 F. 2d 59, 63 (1983). The form "all claims or disputes arising out of or relating to this agreement or the breach thereof" is considered to be a broad form. See Fleet Tire Serv. of North Little Rock v. Oliver Rubber Co., 118 F.3d 619 (1997); Larkin v. Williams, Woolley, Cogswell, Nakazawa & Russell, 76 Cal App 4th 227, 230 (1999). In Rice v. Downs, 248 Cal. App 4th 175, 186 (2016), the court concluded that the phrase "any disputes arising in connection with this agreement" is interpreted broadly to cover every dispute between the parties having a significant relationship to the agreement.

In determining what disputes are subject to arbitration, the contract should be read as a whole. See Cal. Civ. Code §1648. Thus, despite broad wording, an arbitration clause does not apply to disputes unrelated to the matters covered in the contract. Lawrence v. Walzer & Gabrielson, 207 Cal. App. 3d 1501, 1506 (1989).

9

Any doubt as to whether a particular dispute falls within the arbitration clause is generally resolved in favor of arbitration. AT&T Technologies, 475 US 643, 650 (1986). But the principle that arbitration is favored does not apply to find a right to arbitrate where none exists. Victoria v. Superior Court, 40 Cal. 3d 734, 744 (1985).

AAA Commercial Arbitration Rules, R-7 (a), provides that "(T)he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." This is the delegation provision under the AAA Commercial Arbitration Rules.

DISCUSSION

The Arbitrator considers the jurisdictional defenses raised by the parties as to the existence of an arbitral agreement and the scope of the arbitral agreement. In addressing these defenses, it is important to distinguish, as the Court did, between issues that are solely in the province of the Court and issues that can and have been delegated by the parties to Arbitrator.

A. Existence of an Arbitration Agreement Between Cross-Claimants and the Additional Cross-Respondents: Non-signatory Issues

Cross-Claimants have asserted claims against the additional Cross-Respondents under the Morfit Agreement but the Additional Cross-Respondents are not signatories to the Morfit Agreement. Dobson is identified as the CEO and a Director of Parkridge; the other Additional Cross-Respondents are alleged to be owned and operated by Dobson and all are alleged to have acted in unity and collusion with each other.

The Additional Cross-Respondents, having specially appeared to contest arbitral jurisdiction, contend they are not bound to the Morfit Agreement and that any determination

10

Procedural Order No. 2 – ICDR: Parkridge et al. - Indyzen et al. (11.06.17)

thereon is a matter for the Court.[3] Cross-Claimants contend Cross-Respondents are bound and, as the case has been submitted to arbitration by the Court, the question can be decided by the Arbitrator. Cross-Claimants further contend that the Additional Cross-Respondents must be included for this arbitration to be meaningful and fair.[4]

As set forth above, the law is clear that a determination as to the existence of an arbitration agreement between parties is a matter for the courts. The delegation provision incorporated into the Morfit Agreement under the AAA Rules does not authorize the arbitrator to determine jurisdiction over entities that are not parties to the arbitration agreement. The issue as to non-signatories implicates the existence of the delegation itself and the Additional Cross-Respondents have not submitted the issue to arbitration. Accordingly, a court must determine whether the Additional Cross-Respondents are parties to the arbitration agreement. Thereafter, pursuant to the delegation provision agreed to by the parties to the agreement, the Arbitrator can assess the arbitrability of the claims against them.

For that reason, the Additional Cross-Respondents are dismissed from the arbitration subject to any further order from the Court (or agreement by the parties) that they are properly parties to the arbitration agreement.

B. Existence of an Arbitration Agreement between Claimants and Narra

Claimants contest that there is arbitral jurisdiction over Respondent Narra. The Court has already determined that an arbitration agreement exists between Parkridge and Indyzen, and that

---

[3] Cross-Respondents also raise the question of personal jurisdiction. Personal jurisdiction goes to the reach of the courts over a party; it is not an arbitral question. If Cross-Respondents are bound to an arbitration agreement that provides for arbitration in California, they are subject, under the arbitration agreement, to arbitration seated in California.

[4] The immediate question is whether the court or the arbitrator decides on whether non-signatories are bound to the arbitration agreement. The underlying question is not a matter of efficiency; it is ultimately a question as to whether the non-signatories expressly or implicitly consented to be bound as a matter of law.

Mak and Narra are bound to it as agents. Claimants contend that the Court's Order may be read so as to delegate to the Arbitrator authority to reconsider the Court's determination as to the existence of an arbitration agreement. Respondents contend the matter has already been decided by the Court and Narra is a proper party for the reasons relied on by the Court.

As addressed in the case law above, it is the sole province of the Court to determine the existence of an arbitration agreement between the parties; however, the parties may delegate questions of arbitrability to the Arbitrator. As a non-signatory to the arbitration agreement, Narra did not delegate questions as to the existence of the arbitration agreement. The Arbitrator reads the Court's Order as having determined the agreement exists as to Narra (and then confirming the parties' delegation to the Arbitrator the task of determining whether the asserted claims are within the scope of the arbitration provision). Moreover, as discussed later with respect to issues as to scope, the Arbitrator agrees with the Court that at least certain claims as to Narra are dependent on or intertwined with Morfit Agreement.

Therefore, unless the Court instructs the Arbitrator otherwise, the Arbitrator may not reconsider the Court's determination that Narra is a party to the arbitration agreement. Accordingly, Claimants' objection as to jurisdiction over Narra is overruled.

C.  Scope of the Arbitration Agreement as to the Demand.

The parties do not contest the arbitrability of the claims asserted against Indyzen. Claimants contest the arbitrability of the claims asserted against Narra. Count One (Breach of Fiduciary Duty – Cal Law), Count Three (Breach of Fiduciary Duty – HK Law), Count Six (Fraudulent Misrepresentation) and Count Seven (Concealment) in the Demand all appear to be against Narra.

Respondents contend that the Court made an assessment as arbitrability which must properly be adopted by the Arbitrator. Claimants contend that determinations as to scope are a

12

Procedural Order No. 2 – ICDR: Parkridge et al. - Indyzen et al. (11.06.17)

question for the Arbitrator. In light of the delegation provision incorporated in the Morfit Agreement under the AAA Rules, and as confirmed by the Court, determinations as to the scope of the arbitration agreement with respect to the claims, are within the province of the Arbitrator.

The Arbitrator observes that the Court made a preliminary assessment as to the nature of the claims for purposes of determining whether there was a delegation of arbitrability to the Arbitrator. The Arbitrator does not read the Court's Order as a ruling on the scope of the arbitration agreement. Doing so would not be in the province of the Court given the delegation provision and, of course, would defeat the purpose of the Court confirming that questions regarding the scope of the arbitration agreement as to the claims were delegated to the Arbitrator.

Accordingly, the Arbitrator considers whether the four claims in question are within the scope of the arbitration agreement.

Ultimately, the question goes to whether the parties intended that the claims asserted would be subject to the arbitration agreement. The Arbitrator begins with the language of the clause itself and agrees with Respondents that the phrase "any dispute or disagreement arising between the Company and the Customer" is a broad form. By its express language, it is not limited to disputes arising out of the contract nor even to disputes relating to the contract.

However, the clause must also be considered in the context of the entire agreement and the broader relationship between the parties. There is no evidence to suggest that the Morfit Agreement is anything more than a software development agreement and no evidence to suggest that the parties intended it to apply to disputes other than those in the context of the Indyzen being a software developer and Parkridge being its customer.

As alleged, the parties had an extended relationship and various parties held multiple positions. Narra was the CEO of Indyzen and, in the course of his relationship with Parkridge, was

13

appointed as a Director and CTO of Parkridge. (Similarly, Cross-Claimants allege Dobson holds multiple roles among various Cross-Respondents: Dobson and Narra formed Boon together and their spouses, including Mak, have various ownership interests). Accordingly, the question is whether the arbitration provision in the Morfit Agreement was intended to extend to the developer/customer relationship or whether it was intended to extend to all various legal relationships that give rise to the claims.

In that regard, the record does not support the conclusion that the arbitration provision in a software development project agreement between Parkridge and Indyzen was intended to extend to Narra's role in his capacity as director, officer or employee of Parkridge. The Morfit Agreement does not address Narra's role in Parkridge, let alone specify any fiduciary or employee terms or obligations. Accordingly, it does not appear that Narra ever agreed, or that the signatories intended, that the Morfit Agreement would govern his engagement as a director, officer or employee of Parkridge or that that the arbitration clause therein would extend to those relationships.

To be clear, this does not mean that Narra is not bound to the Morfit Agreement. As the District Court has already determined, he is. The question here is whether the claims against him are within the scope of the arbitration clause.

Accordingly, as to Count One for breach of fiduciary duty under California law, the claim appears to arise entirely from Narra's role as a Director and the CTO of Parkridge.[5] The claims asserted are for breaches of duty of loyalty, good faith and care held by a corporate officer and director.  While it is readily alleged that Narra engaged in the wrongful conduct to benefit Indyzen, the obligations owing pursuant to the claim were those of Narra as a director and officer of

---

[5] It is not readily apparent why fiduciary duties owing to a Hong Kong corporation by an officer and director would arise under California law; however, that is not an issue for consideration at this time.

Procedural Order No. 2 – ICDR: Parkridge et al. - Indyzen et al. (11.06.17)

Parkridge and were separate from the agreement Indyzen made to develop software. The claim does not "arise between the Company and the Customer." Accordingly, the objection is sustained and Count One as to Narra is dismissed without prejudice for Claimant to pursue the claim in other proceedings.[6]

As to Count Three against Narra for breach of duty under Hong Kong law, this claim, similarly, appears to arise solely from Narra's obligations as a corporate officer and director of Parkridge. The particular allegations regarding breaches of confidentiality and due care are as to obligations allegedly owing by Narra in his corporate capacity as an officer and director of Parkridge and separate from the agreement Indyzen made to develop software. The claim does not "arise between the Company and the Customer." Accordingly, the objection is sustained and Count Three as to Narra is dismissed without prejudice for Claimant to pursue the claim in other proceedings.

Count Six for Fraudulent Misrepresentation asserts that Narra, on behalf of Indyzen, intentionally misrepresented Indyzen's skills, qualifications and pricing. It is evident from the claim the allegations arise with respect to Narra's role as the CEO or otherwise as an agent of Indyzen. As the arbitration clause is broadly drafted to cover all disputes that "arise between the Company and the Customer," and this claim arises from Narra's role on behalf Indyzen, the claim is within the scope of the arbitration agreement.  Accordingly, Claimants' objection to the claim on the basis of arbitral jurisdiction is overruled.[7]

---

[6] In light of the ruling on Count One, the Arbitrator invites the parties to consider dismissal without prejudice of Count Two against Indyzen (for aiding and abetting in breach of fiduciary duty under California law). Although the Arbitrator makes no assessment of the arbitrability of the claim, it would presumably make sense for the parties to have both Counts considered in the same proceeding.

[7] The choice of law applicable to this claim and any applicable defenses will be addressed in further proceedings.

Count Seven for Fraudulent Concealment asserts that, by way of Narra's position and knowledge, he held a heightened obligation to Parkridge and intentionally concealed material information regarding Indyzen. Although it appears the alleged relationship of trust and confidence arises from both Narra's role at Parkridge and his knowledge of Indyzen, the concealment is alleged to arise and the claim is asserted in the context of Narra acting on behalf of Indyzen to promote Indyzen's services. Therefore, as with the prior claim, the claim is within the scope of the arbitration agreement. Accordingly, Claimants' objection to the claim on the basis of arbitral jurisdiction is overruled.

    D.   <u>Scope of the Arbitration Agreement as to the Cross-claims and Motion to Strike</u>.

As the Additional Cross-Respondents are dismissed without prejudice, the Arbitrator considers the scope of the arbitration agreement only as to the cross-claims against Parkridge at this time. The cross-claims are pled generally but the relief requested appears to arise from development relationship under the Morfit Agreement or otherwise as to disputes between Indyzen as a developer and Parkridge as a customer.[8]

The allegations as to Boon, however, specifically with respect to Narra and Dobson creating Boon and questions regarding ownership or roles therein do not appear to relate to the developer and customer relationship under the Morfit Agreement, and accordingly are not within the scope. The Arbitrator will not entertain claims as to those issue and Cross-Claimants are free to pursue those claims in other proceedings.

Further, the Morfit Agreement specifically excludes "claims arising out of payments due to {Company}." This must reasonably be read to exclude from the scope of arbitration claims with

---

[8] These claims are made jointly by Indyzen and Narra and, as addressed above, the Court has already determined that Narra is a party in his capacity as an agent of Indyzen. Accordingly, Narra is entitled to proceed with claims relating to the development relationship between Indyzen and Parkridge.

Procedural Order No. 2 – ICDR: Parkridge et al. - Indyzen et al. (11.06.17)

respect to payment to Indyzen under the development agreement. The parties offer no evidence as to the intent for this provision; however, the conclusion as to this exclusion is that the parties are to pursue claims for amounts due under the development agreement in court.[9]

In sum, Cross-Claimants' claims in contract or tort regarding misappropriation relating to the development relationship appear to be within the scope of the arbitration agreement. Cross-claimants may proceed with these claims as limited herein; subject to further review by the Arbitrator as the claims develop.

E.  Pleading Issues as to the Cross-Claim

Cross-Respondents contend that the cross-claims are not alleged with sufficient particularity to allow them to respond. The claim as to breach of contract does not expressly specify the breach. The claim as to misappropriation merely alleges that IP rights have been misappropriated.

Claims in arbitration need not be pled with particularity and, accordingly, motions to strike are not routinely allowed. Cross-Respondents have sufficient detail to generally answer as to whether they (1) breached the contract in any way and (2) are rightfully entitled to code developed by Cross-Claimant or otherwise misappropriated proprietary information owned by Cross-Claimants.

The Arbitrator agrees the allegations will not be sufficient for the evidentiary hearing. The parties will be required to disclose all documents upon which they intend to rely and Cross-Claimants' disclosures are required to include specific detail on the alleged contract breaches and to identify the IP allegedly misappropriated, including details as to individuals involved and where,

---

[9] In considering delegation, the District Court made a distinction between claims for amounts due and claims for overpayment. The Arbitrator does not need to reach that narrow distinction as to this claim.

17

Procedural Order No. 2 – ICDR: Parkridge et al. - Indyzen et al. (11.06.17)

when and how the misappropriation occurred.[10] The parties will have an opportunity to request documents and, if agreed or otherwise allowed, other discovery regarding the allegations. Further, the Arbitrator will consider scheduling requiring submission of direct evidence on claims in advance of the evidentiary hearing. If Cross-Claimants fail to provide sufficient detail to allow Cross-Respondents a fair opportunity to respond to the claim at the evidentiary hearing, the Arbitrator will consider dismissal of the claim. Accordingly, the motion to strike as to specificity is denied, without prejudice.

Cross-Respondents also contend that the misappropriation claim "referring to misappropriation of intellectual property" is not actionable under California law and is pre-empted under federal law.

Cross-Respondent appear to base part of their argument on the premise that the choice of law provision in the Morfit Agreement limits the parties to claims under California law. The choice of law provision merely provides the law governing interpretation of the Morfit Agreement. The parties are not restricted from asserting claims under California law, federal law or foreign law.

Cross-Complainants are required, however, to be clear as to the claims asserted so that it may be determined whether the claims are actionable by law and supported by the evidence. The phrase "misappropriated intellectual property rights" is not sufficiently clear as to whether the alleged wrong was a trade secret misappropriation.[11] Cross-Claimants will need to provide further detail as to the claim and the facts supporting it in the course of their disclosures and briefing. Although it is premature to dismiss the claim at the arbitration pleading stage, Cross-Respondents

---

[10] As to all claims, generic descriptions will not suffice. Further, as addressed earlier, claims as to payments due under the Morfit Agreement are precluded by the arbitration clause and will not be allowed.

[11] Claimants are correct that the claim may well be preempted under federal law but, in the context of arbitration, that conclusion is premature at this point.

may seek leave to submit a motion for summary adjudication following disclosures or following submissions in support of the claim. Accordingly, the motion to dismiss for failure to state a claim is denied, without prejudice.

F.   Related Issues

1.   Audio Recording

Respondents objected to Claimants' submission of an audio recording purported to be a dialogue with Mr. Dobson regarding the present motions and the issues in the case. The parties made no agreement and were not authorized by the Arbitrator to submit testimony by audio recording. The participants in the recording were not identified, the submission was not made under oath, and much of the dialogue was vague, nonresponsive and irrelevant as to the instant issues addressed in the current motions. Claimants contend they recognize the evidence was not provided in a standard format but that this recording was the most expedient way to respond to Respondents' briefing. Respondents' objection to the submission of the audio recording for purposes of the instant motions is sustained.

For future planning, unless otherwise allowed by the Arbitrator, all witness testimony is to be provided by written declaration under penalty of perjury under California law. The parties are free to agree to submission of testimony by audio or video recording presuming appropriate measures are taken to ensure the reliability of the testimony and to allow for appropriate objections. The Arbitrator does not intend to admit testimony at the evidentiary hearing without an opportunity for cross-examination.

2.   Receipt of Source Code and other evidence

In the course of briefing, Respondents submitted a letter offering "impeachment evidence" regarding receipt of Morfit App Source Code. The issues in that letter are properly addressed in

19

the merits phase and evidence relating thereto should be included with Respondents' evidentiary submissions. Similarly, various other submissions going to the merits and credibility of the witnesses were included with the submissions. These are all properly matters to be considered at the merits phase.

3.  Preservation and Spoliation

In the course of the briefing, Respondents raised concerns regarding preservation and spoliation of evidence. The parties were invited to enter into a preservation agreement and were cautioned regarding possible preservation obligations and the risk of sanctions, including adverse inferences, for spoliation. At the subsequent status conference, the parties informed the Arbitrator that the issues had been resolved. Accordingly, the Arbitrator takes no further action on these issues at this time.

G.  Procedures and Scheduling

The parties are scheduled for a further status conference in this matter on November 14, 2017. The parties are requested to confer in advance on discovery and other pre-hearing and hearing procedures and on the timetable for this arbitration, including a date for the evidentiary hearing.

An inquiry was made in oral argument, after hearing the Arbitrator's preliminary views, whether this arbitration will be stayed by the Arbitrator pending any disposition by the Court as to the Additional Cross-Respondents. It will not absent any order of the Court or agreement of the parties. The Arbitrator takes no position as to whether a stay is proper as the matter has not been briefed; Cross-Claimants are free to make an application to the Court or the Arbitrator, as appropriate, if they believe there is a proper legal basis to stay the arbitration.

The Arbitrator recognizes that the positions taken by the parties and rulings on the jurisdictional issues result in various claims to be decided in this arbitration and other claims to be addressed in other proceedings. This outcome may not be the most expeditious way to proceed but it is the result required by the parties' arbitration agreement. The Arbitrator intends to proceed to the merits of the claims in arbitration. The parties remain free to agree to submit all disputes to arbitration or litigation. The parties are encouraged to confer as to how they wish to proceed. So Ordered.

Dated:  November 6, 2017

Gary L. Benton, Arbitrator

21