Mark R. Figueiredo, Esq. (SBN 178850)
Ethan G. Solove, Esq. (SBN 308026)
Da Zhuang, Esq. (SBN 289918)
STRUCTURE LAW GROUP, LLP
1754 Technology Drive, Suite 135
San Jose, California  95110
Telephone: (408) 441-7500
Facsimile:  (408) 441-7501

Attorneys for Defendants
INDYZEN, INC. and PRAVEEN NARRA KUMAR

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PARKRIDGE LIMITED, a Hong Kong corporation, by Mabel Mak, and MABEL MAK, an individual,<br><br>                    Plaintiffs,<br><br>          v.<br><br>INDYZEN, INC., a California corporation, and PRAVEEN NARRA KUMAR, an individual,<br><br>                    Defendants. | CASE NO.  16-CV-07387-KAW<br><br>**REPLY IN SUPPORT OF PETITION FOR AN ORDER COMPELLING ARBITRATION PURSUANT TO 9 U.S.C. § 4**<br><br>Date:        March 9, 2018<br>Time:        9:00 A.M.<br>Dept.:       Courtroom 5, 2nd Floor<br>Judge:       Hon. Jeffrey S. White |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## I.     INTRODUCTION

2      In its moving papers for this petition, Indyzen, Inc. ("Indyzen") submitted almost 100

3 pages of hard evidence demonstrating the vast sham web that weaves together the opposing

4 parties to this petition.  In response, the opposing parties did not submit any.  This is the most

5 important piece of information gained from the opposing parties' responses.  At the end of the

6 day, the hard facts speak for themselves.

7      As an initial housekeeping matter, the opposing parties did not follow proper procedure in

8 responding to this petition, and they should not be rewarded for their error with the opportunity

9 for further briefing or a separate hearing.  The opposing parties, consisting of Randy Dobson

10 ("Dobson"), California Fitness & Yoga Centers ("CFYC"), F8 Vietnam Company Limited (the

11 "F8 Company") and Boon Global Limited ("Boon") each filed separate "motions to dismiss."

12 California Management Group ("CMG")—the last opposing party—did not file a response,

13 although CFYC spoke for it in its opposition, highlighting how close the two are.[1]  While the

14 errant filings could have been made in error, it seems likely that the opposing parties are trying to

15 game the system.  They seem to be trying to prevent Indyzen from filing this reply brief (a point

16 made by the opposing parties' counsel in a telephone call with Indyzen's counsel) and to get an

17 opportunity to file a sur-reply for this petition.  The Court should cut through this gamesmanship

18 and deem the opposing parties' responses to be the opposition briefs that they are.  Further, the

19 Court should not consider any further briefing from the opposing parties on the subject.

20      Putting their choice in procedure aside, the opposing parties focus their opposition on

21 trying to knock out Indyzen's petition to compel.  First, they attack the jurisdiction of the court

22 over the petition.  However, the Court has jurisdiction here because all of the opposing parties are

23 alter egos of Plaintiffs Parkridge, Inc. ("Parkridge") and Mabel Mak ("Mak"), both of whom

24 consented to this Court's jurisdiction by filing the complaint that kicked off this case.  Separate

25 and aside from this point, the opposing parties all come under this Court's jurisdiction because

26 the minimum contacts test is met for each.  Dobson, CMG, and CFYC each reached out to

27 _____

28 [1] Just as in Indyzen's moving papers, CMG, CFYC, F8 Company, and Boon are occasionally jointly referred to as Dobson's "Additional Sham Companies" throughout this reply brief.

REPLY IN SUPPORT OF PETITION FOR AN ORDER COMPELLING ARBITRATION

1    Indyzen in California on a continuing basis to negotiate and enter into a contract for which the

2    work was performed in California.  The F8 Company and Boon, as fronts for Dobson, CMG and

3    CFYC, have marketed and sold their app to California customers through various online

4    platforms.  Thus, jurisdiction is proper.

5         Next, the opposing parties try to derail Indyzen's petition by raising the red herring of a

6    "failure to plead" argument.  However, this is just a distraction.  The issue in front of the Court is

7    not whether Indyzen has pled any claims sufficiently, but rather only whether the opposing parties

8    should be sent to arbitration for the arbitrator to decide whether to pursue Indyzen's counter-

9    claims against them.  Indyzen has met its burden for this petition.

10        Finally, the opposing parties attack each of the theories under which Indyzen argues they

11   should be sent to arbitration.  Their main points are to first attack the notion that non-signatories

12   can ever be sent to arbitration, which is dead wrong according to black-letter law.  Then, they try

13   to skirt the question of their alter ego liability by gingerly dancing around the extensive hard

14   evidence presented by Indyzen in its moving papers.  They do not present any of their own.

15   Meanwhile, the form of opposing parties' response briefs themselves betrays the sham.  They

16   were all filed by the same counsel, who is also counsel for Parkridge and Mak.  They are also all

17   almost verbatim copy/paste jobs of each other.

18        At the end of the day, there is nothing new presented by the opposing parties' responses.

19   The hard evidence speaks for itself.  As such, they should all be compelled to arbitration so that

20   the arbitrator can decide whether to pursue claims against them.

## II.      LEGAL AUTHORITY AND ANALYSIS

**A.      Motions to Dismiss Are Not Proper Responses to a Petition to Compel Arbitration. The Court Should Deem the Opposing Parties' Responses to be Opposition Briefs.**

The opposing parties did not file the right type of response to this Petition.  The right

response to a petition to compel arbitration is an opposition brief, not a motion to dismiss.  U.S.

Title 9 governs petitions to compel arbitrations (*See* 9 U.S.C. 4.)  9 U.S.C. 6 states that "[a]ny

application to the court hereunder [this title] shall be made and heard in the manner provided by

law for the making and hearing of motions, except as otherwise herein expressly provided."  No

REPLY IN SUPPORT OF PETITION FOR AN ORDER COMPELLING ARBITRATION

1  exceptions apply here.  Thus, in the Northern District of California, an opposition brief is the

2  proper response to a petition to compel arbitration like the one currently at bar.  (N.D. Cal. Local

3  Rule 7-3.).

4        The opposing parties did not file an opposition to this petition as required.  Instead, they

5  each filed "motions to dismiss" (with the exception of CMG, which did not file anything, but for

6  whom CFYC spoke in its brief, highlighting how close the two are).  There is no law supporting

7  this choice in their filings.  Indeed, they have not provided any reason for their decision, aside

8  from a glossed-over footnote that does not provide any legal grounding.  (*See* Page 1 to each of

9  Opposing Parties 'Motions to Dismiss', n. 2.)  As such, the opposing parties made the wrong type

10  of filing in response to this Petition.  They should have filed an opposition brief.

11        It is possible that the opposing parties made their filings in error.  It is also possible that

12  they did so to try to game the system.  The errant filings were made on the same day that the

13  opposing parties had deadlines to file opposition briefs for this Petition.  Each response contains

14  arguments specifically against this petition and are opposition briefs in every way except their

15  titles.  Counsel for the opposing parties previously filed an opposition brief to a petition to compel

16  in this case, reflecting his knowledge of the proper procedure.  (*See* Dkt. No. 19.)  During a phone

17  call on January 19, 2018, counsel for the opposing parties told counsel for Indyzen that he did not

18  believe that Indyzen had a right to file a reply brief for this petition, since he said his clients did

19  not file any opposition briefs.  (Decl. of Ethan G. Solove, ¶ 2.)  Thus, it seems likely that the

20  errant filings were made in an effort to game the system.  (For further discussion, *see* Indyzen's

21  Objection to the Motions to Dismiss and Request to Deem them Opposition Briefs, Dkt. No. 52.)

22        Regardless of the reason for the errant "motions to dismiss", the Court should deem them

23  to be the opposition briefs that they are.  The Court should also disregard any "replies" that the

24  opposing parties' might make to their "motions to dismiss", as those would be improper sur-

25  replies to this petition.  In the alternative, if the Court is inclined to consider any "replies" filed by

26  the opposing parties, and is also inclined to rule against Indyzen on this petition, Indyzen

27  respectfully requests that the Court give Indyzen the opportunity to file a final sur-reply to be

28  consistent with standard motion practice.

REPLY IN SUPPORT OF PETITION FOR AN ORDER COMPELLING ARBITRATION

1    Additionally and separately, if the Court is inclined to accept the opposing parties

2    "motions to dismiss" as proper for any reason, then Indyzen respectfully requests that the Court

3    consider this reply brief to be an opposition brief to those "motions to dismiss" as well.

4    **B.    Dobson and his Additional Sham Companies Have Not Presented any Hard
         Evidence to Rebut the 100 Pages Submitted by Indyzen.**

5

6    Indyzen filed almost 100 pages of hard evidence in support of its petition to compel.

     Dobson and his Additional Sham Companies did not file any.  They also did not try to rebut any

7    of Indyzen's hard evidence in any meaningful way.  Their silence says it all.

8    Included in Indyzen's hard evidence were emails sent from Dobson himself, emails sent

9    from employees of Dobson's Additional Sham Companies, screenshots from CMG's website,

10   proofs of website registration, screenshots from Dobson's personal Facebook posts, and many

11   other types of hard evidence.  (*See* Pet., Narra Decl., **Exs. A-M**, Dkt. Nos 32, #11-24, and RJN

12   for the same.)  All of this evidence lays out the sham web that Dobson has created, which is

13   discussed at length in the moving memorandum of points and authorities (*See* Pet., MPA at 5-9.)

14   For all of the same reasons discussed in that filing—which have not been rebutted with any hard

15   evidence whatsoever—and also the discussion in Section E(2) below, the Court should order

16   Dobson and his Additional Sham Companies to the arbitration for this case so that the arbitrator

17   can decide whether to proceed with counter-claims against them.

18   **C.    Jurisdiction is Proper Over Dobson and his Additional Sham Companies.**

19   In their opposition briefs, Dobson and his Additional Sham Companies argue that this

20   Court does not have jurisdiction over them.  They are wrong.  This Court has jurisdiction over all

21   of them, because they all meet the jurisdictional standards as laid out below.

22        **1.    Consent**

23   To begin with, this Court has jurisdiction over the opposing parties because they are all

24   alter egos of Parkridge and Mak, who consented to this Court's jurisdiction by filing this current

25   lawsuit.  Consent is a long-standing traditional basis for jurisdiction.  (*See*, *e.g.*, Adam *v. Saenger*

26   (1938) 303 U.S. 59, 67.)  If a party is subject to this Court's personal jurisdiction, then so are its

27   alter egos.  (*See, e.g. ADO Finance, AG v. McDonnell Douglas Corp.* (1996) 931 F. Supp. 711,

28

REPLY IN SUPPORT OF PETITION FOR AN ORDER COMPELLING ARBITRATION

1   714-717 ("If a corporation is the alter ego of an individual or another corporation, then the district

2   court may disregard the corporate form and exercise personal jurisdiction over the other

3   individual or entity.")) The party asserting jurisdiction only has to make a *prima facie* case that

4   alter ego liability exists, which is not a high bar to meet. (*RAE Sys., Inc. v. TSA Sys., Ltd.*, No. C

5   04-2030 FMS, 2005 WL 1513124, at *3 (N.D. Cal. June 24, 2005) (Allegations that go beyond

6   "conclusory allegations," are sufficient to make a *prima facie* showing of alter ego for

7   jurisdictional purposes.)) Here, this Court has jurisdiction over Parkridge and Mak because they

8   consented to it by filing here. In turn, this Court has jurisdiction over Dobson and his Additional

9   Sham Companies because Indyzen has made a successful *prima facie* case of alter ego liability

10  against them, as discussed at greater length in Section B above and E(2) below.

11       **2.     Minimum Contacts**

12       Notwithstanding the consent argument in the previous section, Dobson and his Additional

13  Sham Companies are also covered by this Court's jurisdiction standing on their own. They all

14  had sufficient minimum contacts with California for jurisdiction to apply. Parties come within

15  the jurisdiction of a federal court if they have had "certain minimum contacts with [the forum

16  state] such that maintenance of the suit does not offend traditional notions of fair play and

17  substantial justice." (*International Shoe Co. v. State of Washington* (1945) 326 U.S. 310, 316.)

18  The application of the minimum contacts test is not just "mechanical or quantitative." (*Id.* at

19  318.) Rather, it is fact-specific and aimed at achieving fairness. (*Id.*)

20       Jurisdiction is proper over Dobson, CFYC, and CMG, because they all entered into a

21  contract and had continuing contacts with a California company with the intention that work

22  would be performed in California, which it was. If parties reach out to California to enter into an

23  agreement for which work is supposed to be or is performed in California and have continuing

24  contacts with the state throughout the duration of the contract, then personal jurisdiction is proper.

25  (*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.* (9th Cir. 2003) 328 F.3d 1122, 1131

26  (Jurisdiction was proper over a company which sought out a business relationship in California,

27  had ongoing contacts with the state, and drafted an agreement consummated in California calling

28  for work in California); *Roth v. Garcia Marquez* (9th Cir. 1991) 942 F.3d 617 (Jurisdiction was

REPLY IN SUPPORT OF PETITION FOR AN ORDER COMPELLING ARBITRATION

1   proper over a contract dispute where work was to be performed in California.))

2          Here, Dobson, CMG, and CFYC all reached out to California company Indyzen for

3   Indyzen to develop the Morfit App.  Narra signed the Morfit App while he was in California.

4   Work was to be performed in California at Indyzen's headquarters.  As such, Dobson, CMG, and

5   CFYC all had minimum contacts with California and purposefully availed themselves to the state

6   such that jurisdiction is proper.

7          With respect to the F8 Company and Boon, both companies have been used by Dobson,

8   CMG, and CFYC as fronts to market and sell their apps to California customers through the

9   iTunes Store and Google Plus, so jurisdiction is proper.  Contrary to the opposing parties'

10  assertions—almost all of which are grounded in out-of-circuit law—the Ninth Circuit has ruled

11  that jurisdiction is proper if a company sells products through the internet to customers in that

12  jurisdiction.  (*Opperman v. Path, Inc.* (N.D. Cal. Jan 22, 2014) No. 13-CV-00453-JST, 2014 WL

13  246972, at *3-4 (jurisdiction proper over companies selling apps through the Apple App Store

14  because Apple is headquartered in California.);  (*Goes Int'l, AB v. Dodur Ltd.* (N.D. Cal. Aug 26,

15  2015) 3:14-CV-05666-LB, 2015 WL 5043296 (jurisdiction proper over a company that sells

16  online in the state.);  *Trishan Air, Inc. v. Dassault Falcon Jet Corp.* (C.D. Cal. October 14, 2009)

17  No. CV-08-7294-VBTF(JTLx), 2009 WL 10673286, at *3 ("[E]ven a passive website in

18  conjunction with 'something more'—conduct directly targeting the forum—is sufficient to confer

19  personal jurisdiction.")

20         Here, F8 Fit and Boon have marketed and sold their apps on the iTunes store and Google

21  Play. (Pet., Narra Decl., **Ex. L.**)  Contrary to F8 Fit's and Boon's assertions that Indyzen has

22  only made this allegation in a conclusory fashion (Opp. at p. 4, line 8.), Indyzen has in fact

23  provided hard evidence of this action with images of the app being listed on those app stores.

24  (Pet., Narra Decl. Ex. L.)  As such, both F8 Fit and Boon have directed marketing and sales at

25  California with respect to the Morfit App.  Jurisdiction is proper for all of the opposing parties.

26  **D.    The Opposing Parties' "Failure to Plead Claims Sufficiently" Argument is a Red Herring, and Indyzen Has Met its Standard for This Petition.**

27         Dobson and his Sham Companies allege that Indyzen's petition should be denied because

28

- 6 -
REPLY IN SUPPORT OF PETITION FOR AN ORDER COMPELLING ARBITRATION

they say that Indyzen has failed to plead sufficiently.  This argument is a red herring.  Indyzen has not filed a complaint against the opposing parties with this Court, and is not asking the Court to rule on the merits of any claims.  Thus, a 12(b)(6) motion is improper.  Indyzen has explained sufficiently that the counter-claims stem from the opposing parties' unauthorized cloning, distributing, marketing, and selling of the Morfit App.  All Indyzen has to do to win on this petition is show that it is proper for the opposing parties to be sent to arbitration for the arbitration to make future rulings on the merits of the case.  The court should focus its analysis accordingly.

Further, despite the opposing parties' arguments to the contrary, Indyzen has in fact met its standard for prevailing on a petition to compel arbitration.  The Opposing Parties do not cite to any case law backing up their assertion that the burden is not on the party "resisting arbitration" to show why the claims at issue should not be arbitrated.  Rather, their reliance on *Mundi v. Union* (2009) 555 F.3d 1042, 1046 is misdirection—it does not support the point they claim it does.  They also do not in any way address *Green Tree Financial Corp.-Alabama v. Randolph* (2000) 531 U.S. 79, 90, which Indyzen cited in its petition as holding that the "party resisting arbitration bears the burden of providing that the claims at issue are unsuitable for arbitration."

As such, Indyzen has met its standard for this petition.  The opposing parties' attempt to distract from the issue by bringing in a red herring about failure to state claims has no merit.

**E.      Dobson and his Additional Sham Companies Should Be Compelled to Arbitration.**

Indyzen's moving papers for this petition focused extensively on why the opposing parties should be compelled to arbitration under multiple theories for the arbitrator to decide whether to pursue claims against them.  In the interest of economy, Indyzen will not rehash each and every theory it previously discussed, as all of its original arguments still stand.  Rather, in the interest of being most helpful to the Court, Indyzen will focus this section on rebutting the most glaring of the anti-arbitration arguments made in the opposing parties oppositions.

**1.      The Opposing Parties' Assertion that Non-signatories Can Never be Compelled to Arbitration is Wrong on its Face.**

To begin with, the opposing parties argue that none of them can be compelled to arbitration because none of them signed the Morfit Agreement.  This is not true for several

REPLY IN SUPPORT OF PETITION FOR AN ORDER COMPELLING ARBITRATION

reasons.  First, Dobson did in fact sign the Morfit agreement as Parkridge's CEO and can be

compelled to arbitration as Parkridge's agent, which was discussed at length in Indyzen's moving

papers (Pet., MPA, pages 11-12, lines 26-28; 1-13; *see also* Court Order Compelling Mak and

Narra to Arbitration, Dkt. No. 24 at page 8, lines 18-19: stating that "the Court finds that Mak is

bound by the arbitration provision based on agency principles, despite not being a signatory to the

Morfit Agreement", and also compelling Narra, who signed as an agent of Indyzen.)

   Second, notwithstanding the previous point, it is black letter law that non-signatories can

be compelled arbitration under state law principles, as discussed at length in Indyzen's moving

papers.  (*See* Pet., MPA, at p. 5, lines 1-6; *see also Arthur Andersen, LLP v. Carlisle* (2009) 556

U.S. 624, 629.)  Even *Mundi*, cited by the opposing parties, acknowledges this long-standing

principle.  (*supra*, 555 F.3d at 1044 (To determine whether non-signatories can be compelled to

arbitration, "we apply general state-law principles of contract interpretation, while giving due

regard to the federal policy in favor of arbitration <u>by resolving ambiguities as to the scope of the</u>

<u>arbitration in favor of the arbitration</u>." (emphasis added))

   For all these reasons, the opposing sides' arguments that non-signatories cannot be

compelled to arbitration as a blanket rule are wrong on their face.  The history of this case

currently at bar reflects as much, as the Court previously ordered non-signatories Mak and Narra

to arbitration in response to a previous petition to compel under state law theories.

   **2.**  **Alter Ego**

   The opposing parties' alter ego arguments are weak.  They are also not backed by any

hard evidence.  In their oppositions, the opposing parties' focus on two main points in arguing

why alter ego liability should not apply to them: (1) they claim that the fact that all them share

common ownership is not enough to find alter ego liability; and (2) they find argue that Indyzen

has not shown evidence of commingling of funds.  (*See, e.g.* Dobson Opp. at pp. 10-11.)

   These two arguments are not only wrong, but they also overlook the fact that the standard

for finding alter ego liability is broad and does not require the finding of any specific factors.

Rather, the finding should be an equitable one which does not require a finding of specific

factors, but rather looks to form more than substance.  (*Webber*, 74 Call.App.4th at 900.)  The

- 8 -

1    opposing parties acknowledge as much when they cite the legal standard for alter ego as being the

2    same one as that quoted by Indyzen in its moving papers: (1) that unity of interest such that

3    separate personalities of the corporation and individual or organization controlling it no longer

4    exist; and (2) failure to disregard the corporate entity would sanction fraud or promote injustice.

5    (*Compare* Indyzen's Pet, MPA, p. 4, lines 14-24, citing *Webber, supra* to *e.g.* Dobson's Opp., p.

6    10, lines 7-18, which cites to the same standard.)

7         Indyzen has presented extensive evidence of the vast sham web that Dobson has spun.

8    The opposing parties did not use their opposition opportunity to rebut even one piece of the hard

9    evidence that Indyzen filed with its moving papers, and also did not present any hard evidence of

10   their own.  Contrastingly, the hard evidence filed by Indyzen shows a repeated practice of Dobson

11   using his other company email accounts to do business for the Morfit Agreement, far more than

12   the innocent type of "mix-up" described by the opposing parties. (*Compare* Dobson Opp. at pp.

13   10-11, lines 28, 1-2 to Pet., Narra Decl. and Exhibits, and RJN.)  The hard evidence also shows a

14   history of Dobson moving money around the accounts of his various account to avoid legal

15   liability.  (*Id.*)  Additionally, a glance at the opposing parties' websites and various registration

16   statements shows just how interwoven all of them are with each other, and how they deliberately

17   hold themselves out to the world to be so.  (*Id.*)  In short, **the hard evidence speaks for itself.**

18        **3.    Equitable Estoppel**

19        Most of the opposing parties' arguments against equitable estoppel are off-topic and do

20   not get out of the gates.  For instance, Dobson and his Additional Sham companies argue that

21   equitable estoppel fails because Indyzen has not met pleading standards.  This is a non-sequitur—

22   it has nothing to do with the equitable estoppel doctrine.

23        For those arguments from the opposing sides that are not side-shows, they are conclusory

24   and undeveloped.  For instance, the opposing sides argue that they did not receive any direct

25   benefits of the Morfit Agreement, without providing any backing for the assertion.  (*See, e.g.*

26   Dobson Opp., p. 13, lines 2-12.)  Contrastingly, Indyzen provided an in-depth discussion of how

27   the other parties benefited from the Morfit Agreement, backed up by hard evidence.  (*See* Pet.,

28   MPA, pp. 9-10, lines 10-28, 1-14.)  In short, Dobson and his Additional Sham Companies all

- 9 -

REPLY IN SUPPORT OF PETITION FOR AN ORDER COMPELLING ARBITRATION

1    worked together to clone the Morfit App before marketing it and selling it out to the world.  The

2    other parties' position that this Court must find absolute proof of these direct benefits here is

3    wrong.  All that Indyzen requests is that this Court send the opposing parties over to the arbitrator

4    for him to decide whether he wants to make that determination at the arbitration hearing.

5            The opposing parties' argument that Indyzen has not shown any evidence that they are all

6    inextricably intertwined with each other is also hollow in light of all of the hard evidence

7    presented by Indyzen.  (*See, e.g.* Dobson Opp., p.13, lines 13-18.)

8                              **III.       CONCLUSION**

9            The almost 100 pages of hard evidence submitted by Indyzen with its moving papers for

10   this petition speaks for itself.  The opposing parties have danced around that evidence, while not

11   bringing one shred of hard evidence themselves.  In the meantime, they have made errant filings

12   in apparent attempts to try to game the system for which they should not be rewarded.

13           Contrary to the opposing parties' assertions, this Court does have jurisdiction over all of

14   them because of their consent to appear before this court and their minimum contacts with

15   California.  In the light of the unrebutted and extensive hard evidence submitted by Indyzen in

16   support of this petition, the Court should send all of the opposing parties to arbitration for the

17   arbitrator to decide whether to pursue counter-claims against them.  The Court should also order

18   that the Arbitrator can add other parties to the arbitration as necessary, without future court

19   approval, to prevent Dobson from continuing to use sham companies to avoid litigation.

20

21   Dated: February 1, 2018                    STRUCTURE LAW GROUP, LLP

22

23                                             By: /s/ Ethan G. Solove
                                                  Ethan G. Solove, Esq.
24                                                Attorneys for Defendants
                                                  INDYZEN, INC., and PRAVEEN NARRA
25                                                KUMAR

26

27

28

REPLY IN SUPPORT OF PETITION FOR AN ORDER COMPELLING ARBITRATION