**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| IN RE BOON GLOBAL LIMITED; F8 VIETNAM COMPANY LIMITED; CALIFORNIA FITNESS & YOGA CENTERS COMPANY LIMITED; RANDY DOBSON, | No. 18-71347<br><br>D.C. No.<br>4:16-cv-07387-JSW |
| BOON GLOBAL LIMITED; F8 VIETNAM COMPANY LIMITED; CALIFORNIA FITNESS & YOGA CENTERS COMPANY LIMITED; RANDY DOBSON,<br>　　　　　　　*Petitioners*,<br><br>v.<br><br>UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, OAKLAND,<br>　　　　　　　*Respondent*,<br><br>INDYZEN, INC., a California corporation,<br>　　　　　　　*Real Party in Interest.* | OPINION |

Petition for Writ of Mandamus
to the United States District Court
for the Northern District of California

Argued and Submitted February 4, 2019
San Francisco, California

Filed May 3, 2019

Before:  Richard A. Paez, Marsha S. Berzon,
and Ryan D. Nelson, Circuit Judges.

Opinion by Judge R. Nelson

## SUMMARY[*]

### Mandamus

The panel denied a petition for a writ of mandamus that sought to direct the district court to vacate its order compelling third parties to arbitration, arising from an arbitration clause in a software development and licensing agreement.

In deciding whether to grant mandamus relief, the panel considered the five factors outlined in *Bauman v. U.S. Dist. Court*, 557 F.2d 650, 654-55 (9th Cir. 1977).  The panel began with the third factor – clear error – because its absence was dispositive.  The panel held that the district court applied

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

incorrect legal tests, and did not provide sufficient jurisdictional analysis on the current record. The panel further held, however, that the district court's ultimate finding of jurisdiction was not clear error. Because the district court's finding of jurisdiction over the third parties could possibly prove correct, the highly deferential clear error standard was not satisfied, and mandamus relief was not proper.

The panel held that the other *Bauman* factors likewise supported denying mandamus relief. The panel held that the first two *Bauman* factors – whether petitioner has other, adequate means of relief, or will suffer irreversible damage or prejudice – weighed heavily against mandamus review. The panel also held that the remaining *Bauman* factors did not support granting the petition for mandamus.

## COUNSEL

Adam Wolek (argued) and Zackary R. Clark, Taft Stettinius & Hollister LLP, Chicago, Illinois; David A. Makman, Law Offices of David A. Makman, San Mateo, California; for Petitioners.

Mark R. Figueiredo (argued), Ethan G. Solove (argued), and Austin T. Jackson, Structure Law Group, LLP, San Jose, California, for Respondent-Real Party in Interest.

**OPINION**

R. NELSON, Circuit Judge:

Petitioners Boon Global Limited, F8 Vietnam Company Limited, California Fitness & Yoga Centers Company Limited ("CFYC"), and Randy Dobson (collectively "the Third Parties") seek a writ of mandamus directing the district court to vacate its order compelling the Third Parties to arbitration, and grant the Third Parties' motions to dismiss. Despite the district court's flawed jurisdictional analysis, we deny the petition.

**I**

As alleged in the complaint, around 2013, Randy Dobson began developing an online personal training platform, which later became the "Morfit App." Praveen Narra, CEO of Indyzen (a software development company), pitched his software development expertise to Dobson. Shortly thereafter, Parkridge Limited was formed with Dobson as CEO and Chairman, and Narra as the Chief Technology Officer ("CTO"). As CTO, Narra oversaw the hiring of another software company, TIBCO, to develop the Morfit App. TIBCO ultimately did not deliver a mobile platform app.

In 2015, Parkridge's shareholders agreement was executed, with Narra's father and Mabel Mak (Dobson's wife) designated as shareholders. Parkridge then entered into a software development and licensing agreement (the "Agreement") with Indyzen. Dobson signed the Agreement on behalf of Parkridge as CEO and Narra signed on behalf of Indyzen. The Agreement defined the parties subject to arbitration: "Except for any dispute arising out of payments due to Company, any dispute or disagreement arising

between the Company and the Customer . . . shall be referred to arbitration . . . ." The "Company" was defined as Indyzen and the "Customer" as Parkridge.

On December 29, 2016, Parkridge and Mak sued Indyzen and Narra for improperly developing the Morfit App for Parkridge, alleging breach of fiduciary duties, breach of contract, unjust enrichment, fraudulent misrepresentation, and fraudulent concealment. Indyzen successfully moved to compel arbitration under the Agreement. In arbitration, Indyzen counterclaimed and added, as defendants to the counterclaim, the Third Parties, all of which have or had an affiliation with Dobson and are located in Hong Kong or Vietnam.[1] The arbitrator found he lacked authority to determine jurisdiction over entities not parties to the Agreement and dismissed the Third Parties, subject to a further order from the district court or agreement by the parties.

Indyzen petitioned the district court to compel the Third Parties to arbitrate. The Third Parties filed separate motions to dismiss. The district court compelled the Third Parties to arbitration "in order that the arbitrator may decide whether to allow counterclaims against them to proceed." The district court found that the "Dobson Companies and their business dealings are sufficiently interrelated and interdependent on conduct governed by the Morfit Agreement that the doctrine of equitable estoppel enables the Court to find that the nonsignatories may be bound by the agreement despite not having signed it." After the

---

[1] Indyzen also sought to compel California Management Group ("CMG") to arbitration. Because CMG is a brand operated by CFYC, not its own entity and not a petitioner, we do not address CMG specifically.

arbitration analysis, the district court then found it "may properly exercise jurisdiction over the Dobson Companies. These companies are closely associated with Randy Dobson and, by signing the Agreement to perform the subject work in California, he is properly subjected to the jurisdiction of this Court."

## II

The writ of mandamus is a "drastic and extraordinary" remedy "reserved for really extraordinary causes." *Ex parte Fahey*, 332 U.S. 258, 259–60 (1947). "Only exceptional circumstances amounting to a judicial usurpation of power, or a clear abuse of discretion will justify the invocation of this remedy. The petitioner bears the burden of showing that its right to issuance of the writ is clear and indisputable." *In re Van Dusen*, 654 F.3d 838, 840–41 (9th Cir. 2011) (alterations).

> In deciding whether to grant mandamus relief, we consider five factors: (1) whether the petitioner has other adequate means, such as a direct appeal, to attain the relief he or she desires; (2) whether the petitioner will be damaged or prejudiced in a way not correctable on appeal; (3) whether the district court's order is clearly erroneous as a matter of law; (4) whether the district court's order makes an "oft-repeated error," or "manifests a persistent disregard of the federal rules"; and (5) whether the district court's order raises new and important problems, or legal issues of first impression.

*Id.* at 841 (quoting *Bauman v. U.S. Dist. Court*, 557 F.2d 650, 654–55 (9th Cir. 1977)). Satisfying the third factor is

necessary for granting the writ. *In re Henson*, 869 F.3d 1052, 1058 (9th Cir. 2017) (per curiam). But a petitioner need not satisfy all factors. *Id.* "Mandamus review is at bottom discretionary—even where the *Bauman* factors are satisfied, the court may deny the petition." *San Jose Mercury News, Inc. v. U.S. Dist. Court*, 187 F.3d 1096, 1099 (9th Cir. 1999).

## III

We begin with the third *Bauman* factor, clear error, because "the absence of the third factor is dispositive." *Hernandez v. Tanninen*, 604 F.3d 1095, 1099 (9th Cir. 2010) (internal quotation marks and ellipsis omitted). A writ of mandamus "will not issue merely because the petitioner has identified legal error." *In re Van Dusen*, 654 F.3d at 841. "Mandamus, it must be remembered, does not run the gauntlet of reversible errors." *Will v. United States*, 389 U.S. 90, 104 (1967) (internal quotation marks omitted).

The Third Parties argue that, as foreign corporations with no contacts in the United States, the court lacks jurisdiction over them. We agree that the district court erred in summarily concluding that it had jurisdiction over the Third Parties, but conclude the district court did not commit clear error. Moreover, the remaining *Bauman* factors weigh against mandamus review. Accordingly, we deny the petition. The district court must have personal jurisdiction over each individual third-party entity before compelling them to arbitrate. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over . . . the parties (personal jurisdiction)."). Where no federal statute authorizes personal jurisdiction, the law of the state in which the district court sits applies. *Mavrix Photo, Inc. v. Brand*

*Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). California's long-arm statute authorizes personal jurisdiction to the extent permitted by the Due Process Clause of the United States Constitution. Cal. Civ. Proc. Code § 410.10. "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004). Due process, in turn, requires that each party "have certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

A party seeking to establish jurisdiction over a person or entity can either: (1) show each defendant's sufficient, direct contacts with the forum state, or (2) use the alter ego theory to "extend personal jurisdiction to a foreign parent *or* subsidiary when, in actuality, the foreign entity is not really separate from its domestic affiliate." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015). The party asserting jurisdiction bears the burden to establish jurisdictional facts. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). When the party invoking jurisdiction does not ask for jurisdictional discovery (Indyzen did not), we must evaluate whether the "pleadings and affidavits establish a prima facie showing of jurisdictional facts." *Data Disc., Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1286 (9th Cir. 1977). Although the party asserting jurisdiction is "required only to establish a prima facie showing of jurisdictional facts," the standard is not toothless. *Id.* at 1285 n.2. The party asserting jurisdiction "cannot simply rest on the bare allegations of its complaint"; however, "uncontroverted allegations in the

complaint must be taken as true." *Schwarzenegger*, 374 F.3d at 800 (internal quotation marks and citation omitted). "Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.*

Here, the district court's analysis concerning whether Indyzen made a prima facie showing of jurisdictional facts was flawed. The district court exercised jurisdiction over Dobson because he "sign[ed] the Agreement to perform the subject work in California" and over the foreign third-party entities because they "are closely associated with" Dobson. "Closely associated" is not a proper jurisdictional test.

Instead, each party's "contacts with the forum [s]tate must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984). The district court therefore erred in not conducting an individualized jurisdictional analysis for each third party. A three-part test controls whether non-residents have sufficient contacts to be subject to specific personal jurisdiction: (1) the non-resident must purposefully avail himself of the privilege of conducting business in the forum; (2) the claim must arise out of the forum-related activities; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Schwarzenegger*, 374 F.3d at 802. "The exact form of our jurisdictional inquiry depends on the nature of the claim at issue." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). For claims sounding in contract, a purposeful availment test is used; for claims sounding in tort a purposeful direction test is used. *Id.* at 1212.

### A.

To begin, we turn to Dobson's contacts. The district court did not specify whether it was determining jurisdiction based on a contract or tort claim. Rather, the district court

solely focused on Dobson's signature on the Agreement with
Indyzen. Dobson signed the Agreement with Indyzen
specifically as CEO of Parkridge, a corporation subject to
California's jurisdiction through the Agreement. The
district court—with no further analysis—found that
signature sufficient to exercise jurisdiction over Dobson
personally. But, Dobson's signature on the Agreement as
CEO does not "automatically establish sufficient minimum
contacts in the other party's home forum." *Burger King
Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). A corporate
officer does not become a party to the contract simply by
"signing it in the officer's representative capacity."
Restatement (Third) of Agency § 6.01, rep. n.2 (Am. Law
Inst. 2003); *Forsythe v. Overmyer*, 576 F.2d 779, 783–84
(9th Cir. 1978) ("[A] corporate officer who has contact with
a forum only with regard to the performance of his official
duties is not subject to personal jurisdiction in that forum.").
Therefore, the district court erred.

Indyzen argues we should nevertheless find jurisdiction
over Dobson because he was the "guiding spirit" behind
Parkridge and used "his Additional Sham Companies to steal
the Morfit App and its intellectual property by cloning it
without authorization before renaming it and selling it out to
the world." Corporate officers can be liable for corporate
actions where they are "the guiding spirit behind the
wrongful conduct, or the central figure in the challenged
corporate activity." *Facebook, Inc. v. Power Ventures, Inc.*,
844 F.3d 1058, 1069 (9th Cir. 2016) (internal quotation
marks omitted). Indyzen does not clarify whether its claims
against Dobson sound in contract or tort.[2] Indyzen's main

---

[2] After the district court entered its order, Indyzen filed a "statement
of particulars on cross-claims" in the arbitration. This court applies "a
general rule against entertaining arguments on appeal that were not

complaint appears to be that it never received full payment under the Agreement, although Parkridge seems to have paid Indyzen a large sum in 2015. If the claim is for breach of contract, Dobson would lack sufficient contacts with California solely because he signed the Agreement in his capacity as Parkridge's CEO. *See Forsythe*, 576 F.2d at 783–84.

For claims sounding in tort, a corporate officer can be subject to jurisdiction based on his own sufficient individual contacts with the forum. *See Davis v. Metro Prods., Inc.*, 885 F.2d 515, 522 (9th Cir. 1989). "But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Walden v. Fiore*, 571 U.S. 277, 286 (2014). As such, to find jurisdiction Parkridge's contacts would have to be imputed to Dobson. *See Davis*, 885 F.2d at 520 ("Because the corporate form serves as a shield for the individuals involved for purposes of liability as well as jurisdiction, many courts search for reasons to 'pierce the corporate veil' in jurisdictional contexts parallel to those used in liability contexts.").

To be sure, Dobson, as CEO of Parkridge, had more contacts with California than the other foreign third-party entities. Indyzen's lack of clarity before the district court and this court, however, makes it difficult to assess a theory of liability for Dobson sufficient to exercise personal jurisdiction. For example, in *Davis*, we found jurisdiction over a corporation's only corporate officers because they solicited business from multiple forum residents, had

---

presented or developed before the district court." *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1321 (9th Cir. 1998) (internal quotation marks omitted). Even so, Indyzen's precise theory of liability, whether sounding in contract or tort or both, remains opaque.

12              In re Boon Global Ltd.

already defended themselves in multiple lawsuits in the forum, and were on notice that they could be personally liable for any securities violations they committed while conducting business in the forum state. 885 F.2d at 522–23. Dobson's contacts, however, may be more analogous to *Picot*, where we found that an oral agreement and one party's two trips to California "did not create sufficient minimum contacts to subject him to personal jurisdiction." 780 F.3d at 1213. If Indyzen's claims sound in tort, we cannot say definitively jurisdiction was wrongly exercised, and therefore the district court did not clearly err.

**B.**

With respect to the other third-party petitioners, the district court erred by failing to conduct individualized inquiries over each third-party entity and by instead concluding that it could assert personal jurisdiction because they were "closely associated" with Dobson. Again, "closely associated" is not the requisite test for jurisdiction.

Applying the proper standards, it is questionable whether Indyzen has shown that the foreign third-party corporations maintained sufficient direct contacts with California. To the extent jurisdiction hinges on Boon and F8 selling apps to California residents through iTunes and Google Plus, there is no allegation as to whether Boon and F8 targeted their app sales at California residents. *Mavrix Photo, Inc.*, 647 F.3d at 1229 ("[W]e have held that operating even a passive website in conjunction with something more—conduct directly targeting the forum—is sufficient.") (internal quotation marks omitted). We therefore doubt that Indyzen has shown facts sufficient to find jurisdiction. Indyzen also has not shown whether CFYC entered into direct competition with Indyzen in the California marketplace, another mechanism to establish jurisdiction. *See*

*CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1077–78 (9th Cir. 2011) (finding jurisdiction where company downloaded intellectual property directly off website and republished content for purpose of directly competing in forum state with owner of material).

Nor has Indyzen established that any other third party purposefully directed activities at California. Indyzen claims that "CMG and CFYC both consistently sent emails to Indyzen regarding the Morfit Agreement throughout its duration," arguing that their interaction with Indyzen, a company headquartered in California, established jurisdiction. However, the "minimum contacts analysis looks to the [entity's] contacts with the forum State itself, not with the [entity's] contacts with persons who reside there." *Walden*, 571 U.S. at 285.

To the extent Indyzen's evidence shows connections to activities in California, the evidence either does not concern the Third Parties sued in the counterclaim or appears inadequate for jurisdictional purposes. Indyzen points to an email from Dobson to Narra stating that R&R Holdings, a holding company for Parkridge, would pay Indyzen for services rendered;[3] a list of CFYC trainers, sent at Indyzen's request, who would beta test the Morfit App; and CFYC and CompIndia, an Indian company, coordinating Vietnamese visas for CompIndia employees. Noticeably absent is any evidence concerning any third-party cross-defendant other than CFYC. And CFYC's limited contacts likely do not establish CFYC purposely directed activities at California. *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990). "[B]oth this court and the courts of California have

---

[3] R&R Holdings was not named as a third-party defendant in the counterclaim.

concluded that ordinarily use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the forum state." *Roth v. Garcia Marquez*, 942 F.2d 617, 622 (9th Cir. 1991) (internal quotation marks and brackets omitted).

Perhaps the district court meant to apply the alter ego theory of jurisdiction for the third-party entities. If so, its analysis was entirely inadequate to establish that the foreign third-party entities were Parkridge's alter egos. "California recognizes alter ego liability where two conditions are met: First, where there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased; and, second, where adherence to the fiction of the separate existence of the corporation would sanction a fraud or promote injustice." *In re Schwarzkopf*, 626 F.3d 1032, 1038 (9th Cir. 2010) (internal quotation marks and ellipsis omitted); *Ranza*, 793 F.3d at 1073 (same test for personal jurisdiction).

The "unity of interest and ownership" prong requires "a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former."[4] *Ranza*, 793 F.3d at 1073 (internal quotation marks omitted). While "[t]otal ownership and shared management personnel are alone insufficient to establish the requisite level of control," pervasive control can be shown where one corporation "dictates every facet of [the affiliate's]

---

[4] Parkridge and the third-party entities are not parent-subsidiaries, but the jurisdictional analysis remains the same for sister corporations. *See, e.g.*, *Riddle v. Leuschner*, 335 P.2d 107, 110–12 (Cal. 1959) (applying same alter ego analysis for stockholders and sister corporations).

business—from broad policy decisions to routine matters of day-to-day operation." *Id.* (internal quotation marks omitted).

Indyzen claims that Parkridge has no physical office space or employees, and does not observe corporate formalities like issuing shares or holding annual board meetings. Indyzen then points to a series of emails and registered websites that show, at best, the Morfit App was launched at CFYC headquarters and CFYC registered F8 Vietnam's website. The Third Parties in turn swear with conclusory statements in affidavits that they observe corporate formalities. Indyzen has not presented evidence that the third-party entities commingled funds with Parkridge, or that the companies did not maintain corporate formalities such as keeping their own accounting books or paying their own taxes. We have previously held that jurisdiction cannot lie where there is no evidence of undercapitalization, failure to keep adequate records, or the free transfer of company assets—all of which would normally be signs of a sham corporate veil. *See id.* at 1073–74. The fact that "[s]ome employees and management personnel move between the entities . . . does not undermine the entities' formal separation." *Id.* at 1074.

Further, the district court did not make a finding that treating the Third Parties as separate corporate forms would "result in fraud or injustice." *Id.* at 1073. Conclusory allegations that Dobson structures companies to escape liability are insufficient to confer personal jurisdiction. Something more is needed. *See, e.g.*, *In re Schwarzkopf*, 626 F.3d at 1039–40 (alter ego theory recognized where individual used corporation to acquire asset at time when he was insolvent); *Riddle*, 335 P.2d at 112 (finding injustice would result where jurisdictional facts showed that insolvent

company's assets were transferred to another company as a means of avoiding creditors).  Without determining that both prongs of alter ego jurisdiction were met, the district court's jurisdictional analysis concerning the Third Parties was flawed.  *Ranza*, 793 F.3d at 1073.[5]

## IV

In sum, although the district court applied the incorrect legal tests, and did not provide sufficient jurisdictional analysis on the current record, we cannot say the district court's ultimate finding of jurisdiction was clear error. Because the district court's finding of jurisdiction over the Third Parties could possibly prove correct, the highly deferential clear error standard is not satisfied, and mandamus relief is improper.

The other *Bauman* factors likewise support denying mandamus relief.  Taken together, the first and second *Bauman* factors—whether petitioner has other, adequate means of relief or will suffer irreversible damage or prejudice—weigh heavily against mandamus review.  *See In re Henson*, 869 F.3d at 1058 ("[w]e generally examine the

---

[5] The Third Parties also argue the district court erred in binding them to a contract "they never signed."  However, "nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles," which includes veil-piercing/alter ego and equitable estoppel.  *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006).  The district court relied on equitable estoppel to bind the Third Parties to arbitration.  But it did not engage in a complete analysis because it did not consider whether the Third Parties "knowingly exploit[ed] the agreement."  *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1046 (9th Cir. 2009) (applying equitable estoppel arbitration analysis).  And the alter ego theory for personal jurisdiction is tied to whether the Third Parties may be compelled to arbitrate.  *See supra* at 14–16.  Therefore, we do not address the arbitration issue separately.

first and second factors together"). While, "[a]n order staying proceedings and compelling arbitration is not a final decision that is subject to ordinary appeal," any prejudice to the Third Parties is ordinarily correctable on appeal from the final judgment. *Id.* (citing *Johnson v. Consumerinfo.com, Inc.*, 745 F.3d 1019, 1021–23 (9th Cir. 2014)) (recognizing instance where prejudice from district court's error compelling arbitration is not correctable on appeal).

The Third Parties argue they lack adequate relief on appeal because of the "enormous" expense they will incur to participate in the arbitration. This court, however, has said "litigation costs are a factor weighing in favor of mandamus relief only in the most extreme circumstances." *In re Swift Transp. Co.*, 830 F.3d 913, 916 (9th Cir. 2016) (internal quotation marks omitted); *see also Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 383 (1953) ("extraordinary writs cannot be used as substitutes for appeals even though hardship may result from delay and perhaps unnecessary trial") (internal citation omitted). Further, "the general rule [is] that appellate courts should avoid determining jurisdictional issues on a petition for mandamus." *In re Ivy*, 901 F.2d 7, 10 (2d Cir. 1990). Here, denying mandamus review is also consistent with the Federal Arbitration Act's effect of "limit[ing] appeals from orders directing arbitration." *Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1153 (9th Cir. 2004). There is no reason to believe this court could not review jurisdiction on direct review after arbitration concluded.

Because it remains unclear whether the Third Parties are subject to the court's jurisdiction and because the merits of the counterclaims have yet to be decided, the Third Parties have not shown they lack an adequate remedy at law or they will be "damaged or prejudiced in a way not correctable on

appeal." *In re Van Dusen*, 654 F.3d at 841; *see also Cole v. U.S. Dist. Court*, 366 F.3d 813, 822–23 (9th Cir. 2004) (denying mandamus despite clear error where petitioners had other adequate means of relief).[6]

The remaining *Bauman* factors similarly do not support granting the petition for mandamus.  The Third Parties have not shown that the "district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules." *Bauman*, 557 F.2d at 655.  Further, while this court has not often addressed personal jurisdiction over corporate officers, minimum contacts and alter ego jurisdiction are not matters of first impression.  *Id.*  Although the district court erred in its jurisdictional analysis and likely erred in its assertion of jurisdiction based on the record before us, mandamus is not an appropriate remedy at this stage.

## V

Because the *Bauman* factors do not support granting the petition for mandamus, it is therefore

**DENIED.**

---

[6] On mandamus review, we cannot order the district court to revisit the personal jurisdiction analysis without granting the writ.  Still, the district court should "protect[] an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Burger King Corp.*, 471 U.S. at 471–72 (internal quotation marks omitted).